**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEBORAH WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-cv-06020 |
| | ) | |
| ERNESTINE B. BECK-FULGHAM, both | ) | Honorable Nancy L. Maldonado |
| ind. and in her official capacities as Village | ) | |
| Manager, JOSEPH ROUDEZ III, both | ) | **Jury Trial Demanded** |
| Ind. and his official capacities as Mayor, and | ) | |
| UNIVERSITY PARK, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

NOW COMES Plaintiff, DEBORAH WILSON, by and through her attorney, GIANNA R. SCATCHELL and ELLIE KOZLOWSKI of DISPARTI LAW GROUP, P.C., and complains of Defendants, ERNESTINE B. BECK-FULGHAM, in her official and individual capacities, JOSEPH ROUDEZ III, in his official and individual capacities, and the VILLAGE OF UNIVERSITY PARK (collectively "Defendants"), and alleges upon personal knowledge regarding herself or each of her own acts, and on belief, regarding all other matters:

## NATURE OF THE CASE

1. Wilson was a veteran police officer and the first female police chief in the Village of University Park. She was battered by the Village Golf Course's Manager and employee. Wilson's problems with the Village began when she refused to drop the charges for battery against the Golf Course manager and employee and opposed the Defendants' unlawful conduct and mismanagement of Village funds. Defendants retaliated against Wilson by stripping her of her supervisory rights, barring her from Village property, stealing her duty guns and other

1

property, and violating her due process rights by unlawfully removing her as police chief and terminating her from the police department without "just cause."

## JURISDICTION AND VENUE

2. Jurisdiction over the federal claims arises under 42 U.S.C. §§ 1983, 1988, 28 U.S.C. §§ 1331, 1343, and the First, Fifth, and Fourteenth Amendments to the United States Constitution, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*.

3. The Court also has jurisdiction over the state law claims asserted in this action under 28 U.S.C. § 1367 because the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this Court because Defendants' acts complained of occurred in University Park, Illinois, Will County, which is within the jurisdictional boundaries of this Court.

## PARTIES

5. Plaintiff, Deborah Wilson (hereafter "Plaintiff" or "Wilson"), is a resident of the Village of University Park, Illinois. She was employed as a full-time Village police officer from 1999 until her wrongful termination on or about April 5, 2022.

6. Wilson's place of employment was the Village of University Park, Police Station, 650 Burnham Drive, which is in Will County, Illinois.

7. Defendant Ernestine Beck-Fulgham ("Beck-Fulgham") was appointed as the Village Manager. She is a final policymaker at all times relevant. She engaged in the conduct complained of while acting under the color of law. She is sued in her official and individual capacities.

8. Defendant Joseph Roudez III ("Roudez") is an elected official serving as Mayor of the Village of University Park. He is a final policymaker. He engaged in the conduct complained of while acting under the color of law. He is sued in his official and individual capacities.

9.  Defendant, Village of University Park, Illinois (hereafter the "Village") is a manager-managed municipal corporation that operates as a home-rule unit of government.

10. The Village has indemnification obligations for wrongful acts committed by its officials, employees, and agents. See 745 ILCS §§ 10/1-202 and 9-102. Accordingly, it is responsible for the challenged actions of the individual Defendants and the Village.

## EXHAUSTION OF ADMINISTRATIVE RELIEF

11. On December 29, 2021, Wilson filed an inquiry with the Equal Employment Opportunity Office ("EEOC") alleging that Beck-Fulgham retaliated against her for refusing to manipulate her testimony, investigating improper or illegal Village conduct, refusing to void validly issued police tickets, and pressing charges against the Golf Course manager and employee.

12. From December 2021 to April 2022, Wilson reported the Defendants' unlawful conduct to the Will County State's Attorney's Office and the F.B.I.

13. On February 17, 2022, Wilson filed a supplemental charge with the EEOC, which was cross-filed with the IDHR based on discrimination and retaliation for her protected oppositional conduct in the Kitching sexual harassment matter, pressing charges in the Golf Course batteries, and reporting Beck-Fulgham's and Roudez' III's misconduct.

14. The EEOC Charge Numbers are: 440-2022-02335 and 440-2022-03535.

15. On or about October 5, 2022, Wilson filed a supplemental charge with the EEOC, which was again cross-filed with the IDHR for discrimination and retaliation related to her removal as police chief and termination from the police department without due process.

16. Wilson received the EEOC right-to-sue letter on or about February 6, 2023, a copy is attached hereto as Exhibit A.

## FACTS COMMON TO ALL CLAIMS

3

### Chief Wilson's Background

**17.** Wilson has an extensive and exemplary law enforcement background. She was the Village's first female police chief and the first African American female police chief in Will County.

**18.** In April 2020, Wilson rose through the ranks and was appointed the Village's police chief.

**19.** Wilson's compensation as police chief included an annual salary of $125,000 and the following benefits: medical insurance; 200 vacation hours; 144 floating holiday hours; all Village-recognized holidays off; 10 hours of sick time per month, training, and a take-home vehicle.

### Four Events Leading to Wilson's Termination

**20.** Four different events from November 2021 to December 2021 triggered this Complaint's filing.

### Event 1 - Chief Wilson Witnesses the Village Manager Sexually Harassing an Employee

**21.** Wilson's problems with the Village began when she agreed to testify on behalf of Village employee Keisha Kitching ("Kitching") in her sexual harassment claim against Beck-Fulgham.

**22.** On or about October 27, 2021, the Board of Trustees placed Beck-Fulgham on involuntary administrative leave for failing to disclose the Kitching EEOC charge to the Board.

**23.** On or about November 2021, Beck-Fulgham approached Wilson and improperly attempted to influence Wilson's future testimony.

**24.** Wilson rebuffed this attempt, which, on belief, angered Beck-Fulgham.

### Event 2 - Village Property is Missing from the Golf Course

**25.** The Village owns the University Park Golf Club and Conference Center ("Golf Course"), an 18-hole championship golf course located within the city limits. Currently, C.H.W. Management Group L.L.C. leases the golf course from the Village.

**26.** On belief, one of C.H.W.'s members, Sonia Coffee ("Coffee"), reportedly manages the Golf Course remotely from Ohio and is rarely on-premises.

27. Village residents took issue with C.H.W.'s management and questioned why the Village paid C.H.W. over $800,000, which significantly exceeded its $14,000 in revenue.

28. Current leaseholders, like C.H.W., maintained an unwritten understanding that the Village would store and retrieve its property from the Golf Course's garage.

29. On November 4, 2021, Public Works Director Darrell Byther ("Byther") and his foreman, Dontrell Brown, went to the Golf Course's garage to retrieve one of the Village's tire changers.

30. A CHW employee, Putman, told them that his Manager, Sonia Coffee, directed him not to allow any Village employees onto the property because they were trespassers. The situation escalated with Putman (a Caucasian male) calling Byther a "nigger."

31. Byther called Wilson and requested police assistance at the Golf Course.

32. Even though Wilson arrived in full police uniform and her police vehicle, Putman denied Wilson access to the garage.

33. Putman called Coffee and put the phone on speaker so that Wilson could talk to Coffee.

34. Coffee began yelling at Wilson, "Get out! Get out! None of you are allowed on the property. Y'all are trespassing!" Coffee disconnected the call.

35. Coffee knew that Wilson was at the Golf Course but still called the Village police on Wilson and the public works employees.

36. Ultimately, Wilson and the public works' employees accessed the garage through an opening, and Byther discovered that the tire changer and other Village property were missing.

37. Wilson wrote a police report for the missing Village property.

38. Wilson spent the next two weeks investigating the theft of the Village property and unsuccessfully attempted to identify Coffee.

39. Wilson notified Beck-Fulgham about the incident and asked for her help. Beck-Fulgham refused to help Wilson and said she would not be involved with the matter even though it concerned missing Village property.

### Event 3 - Altercation at the Golf Course

40. On December 16, 2021, Wilson drove past the Golf Course and noticed that Coffee's vehicle was parked in the parking lot prompting Wilson to stop at the Golf Course to identify Coffee.

41. Even though Wilson arrived in her police vehicle and in full police uniform, two golf course employees lied to Wilson and told her that Coffee was not at the Golf Course.

42. Moments later, Wilson saw Coffee emerge from her office. When Wilson attempted to speak with Coffee, Coffee ran back into her office, while one of her employees, DeVaughn J. Mathus ("Mathus"), physically blocked Wilson from accessing Coffee.

43. The situation escalated with Mathus and Coffee physically attacking Wilson, prompting her to request backup police units.

44. The Golf Course's security camera system captured the batteries, as illustrated in the two photos below. On belief, these photo stills identify Coffee, Mathus, Wilson, and another golf course employee from the point of view of Coffee's interior office and its exterior vantage point.



EXTERIOR OF MS. COFFEE'S OFFICE AND GOLF PRO SHOP



INTERIOR OF MS. COFFEE'S OFFICE AT THE GOLF COURSE

**45.** On belief, Coffee called various Village officials, including Roudez III and Village trustees Lewis and Bolding, whom all appeared at the Golf Course shortly after the incident.

**46.** Coffee and Mathus were charged with aggravated battery to a peace officer.

**47.** On January 6, 2022, the Will County State's Attorney's Office indicted both Coffee and Mathus for felony aggravated battery to a police officer for pushing Wilson in an insulting or provoking nature, knowing that she was a peace officer performing her official duties. Coffee was also

charged with misdemeanor resisting arrest. *People v. Sonya Coffee*, 2021CF001854. The criminal cases are still pending.

### The Village's Multi-Faceted Attack on Wilson

48. Later that day, Beck-Fulgham placed Wilson on an involuntary paid administrative leave "pending an [internal] investigation." (A copy of this letter is attached hereto as Exhibit B).

49. This involuntary leave occurred just hours after she was battered at the Golf Course and before the Village could have adequately investigated the matter.

50. As part of this leave, Beck-Fulgham suspended Wilson's police powers; prohibited Wilson from representing herself as a police officer or taking any action on behalf of the Village; ordered her to turn over her identification card, take-home vehicle, keys, duty weapons, and other Village equipment; prohibited Wilson from entering any non-public area of the Village including her office. (See prior Exhibit B)

51. On or about January 27, 2022, Wilson was ordered to appear at an interrogation according to the Illinois Peace Officer Disciplinary Act.

52. On April 1, 2022, Beck-Fulgham sent Wilson a letter with an ultimatum to resign or be fired by April 5, 2022, due to "serious questions in her mind as to [Wilson's] ability to continue to serve as the Police Chief" (Copy of the 04/01 letter is attached as Exhibit C).

53. On April 5, 2022, Wilson responded to Beck-Fulgham's letter rebutting her unlawful efforts to remove her as both police chief and as a police officer and also requested a hearing before both the Board of Trustees and the BOFPC. (April 5th Letter is attached hereto as Exhibit D)

54. Defendants Beck-Fulgham and the Village ignored Wilson's letter and relied on Beck-Fulgham's unilateral decision to remove Wilson as police chief and terminate her as a police officer.

**Defendants Eviscerated Wilson's Procedural Due Process Rights**

*Violation 1 – Defendants Failed to Remove Wilson as Police Chief Properly*

55. Illinois law establishes a process to appoint and remove a police chief in a home-rule municipality. 65 ILCS §§ 5/10-2.1-4, 2.1-17.

56. The Village Manager must file a statement of charges against the police chief outlining the reasons for such removal, which shall not become effective unless confirmed by a majority vote of the Trustees. §10-2.1-4.

57. No police chief shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in her defense within 30 days of the charges filed. §10-2.1-17.

58. Before removing Wilson as police chief, Beck-Fulgham was required to file a statement of charges with the Board of Trustees with the reasons for removing Wilson. §10-2.1-4, 2.1-17.

59. Beck-Fulgham never filed the required charges against Wilson with the Board of Trustees in violation of §10–2.1–4.

60. As such, Beck-Fulgham improperly removed Wilson as police chief because she lacks authority under Illinois law to unilaterally remove Wilson. *Lane v. Vill. Of Heyworth*, 2019 I.L. App (4th) 180488, ¶ 23, 133 N.E.3d 1282, 1289.

61. Wilson was never allowed to be heard in her defense in violation of statute before removal.

62. The Village Board of Trustees held two regular meetings on March 8th and 22nd and did not vote on Wilson's removal as police chief at either meeting or in executive session.

63. Consequently, the Board of Trustees never even voted to remove Wilson as police chief in violation of §10–2.1–4.

*Violation 2 – Defendants Fired Wilson without "Just Cause" and without any Hearing*

64. The Village's Board of Fire and Police Commissioners ("BOFPC") is a statutorily created administrative agency created, which is vested with the authority to hire, promote, discipline, and discharge University Park police officers under §5/10-2.1-1.

65. As a full-time police officer, Wilson could not be terminated without establishing a "just cause" reason before the BOFPC.

66. Wilson performed all the duties of a police officer satisfactorily.

67. The police chief can only suspend an officer for five days or less without providing written notice to the BOFPC. (5/10-2.1-17).

68. Upon such written charges filed by the police chief, the BOFPC maintains authority to discharge or suspend an officer for up to 30 days.

69. Beck-Fulgham was not the police chief of the Village of University Park.

70. Beck-Fulgham, in violation of state law, unilaterally terminated Wilson as a police officer by operation of the April 1, 2022, letter.

71. Beck-Fulgham never brought charges to the BOFPC seeking Wilson's termination as a police officer or any other form of disciplinary action against her in violation of § 5/10–2.1–17.

72. Wilson cannot seek administrative review of her termination because Beck-Fulgham, as the Village Manager, is not an administrative body defined by the Illinois Administrative Review Act, and there was never a hearing before an administrative body to review.

73. If not approved, the BOFPC's decision is neither valid nor final. *Baldermann v. Bd. Of Trustees of the Police Pension Fund, Vill. of Chi. Ridge*, 2015 I.L. App (1st) 140482 ¶¶ 31-34.

74. Wilson received **no process** regarding her termination as a police officer in violation of §5/10-2.1–17.

## COUNT I—42 U.S.C. § 2000e(3)(a) RETALIATION
### Wilson v. Village of University Park, Illinois

**75.** Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

**76.** At all times relevant, Defendant Village has been an Employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. 2000e, *et seq.*, in that it has been in an industry affecting commerce employing fifteen or more employees for each working day for each of twenty or more calendar weeks in the year before this Complaint filed.

**77.** At all times relevant, Wilson was an employee within the meaning of Title VII.

**78.** Wilson engaged in conduct protected by Title VII, including, but not limited to, opposing unlawful and discriminatory practices toward the Village, pressing charges against the Golf Course Manager and employee, and refusing to alter her testimony to favor Beck-Fulgham.

**79.** At all times relevant, Defendant Village, by its officials, agents, and employees, was aware of Wilson's protected activity and oppositional conduct based on the foregoing allegations.

**80.** Specifically, within days of the Defendants learning about Wilson's protected activities, Defendant Village, by its officials, agents, and employees, took adverse actions against Wilson that "might well" dissuade a reasonable worker from making or supporting a charge of retaliation in violation of 42 U.S.C. 2000e-3(a) in the following ways:

    **a)** Placing Wilson on involuntary leave and initiating an internal investigation within hours of the Golf Course battery before any meaningful investigation could have occurred;

    **b)** Improperly removing Wilson as police chief without the requisite process;

    **c)** Terminating Wilson as a police officer without "just cause" and without an opportunity to be heard before the BOFPC as described above;

**d)** Falsely accusing Wilson's son, an employee of the Village's public works department, of smoking marijuana in a Village vehicle; and

**e)** Allowing Village administrators like Beck-Fulgham and Roudez III to spread several false and defamatory statements accusing Wilson of having an extramarital affair with Darrell Byther without impunity. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *Abdullahi v. Prada U.S.A. Corp.*, 520 F.3d 710, 713 (7th Cir.2008); *Grayer v. Welch*, No. 09 C 3924, 2011 WL 4578373, at *11–12 (N.D. Ill. September 30, 2011).

**81.** As a direct and proximate result of Defendant Village's unlawful actions, Wilson has suffered economic and non-economic damages, including lost pay, benefits, reputational damage, emotional distress, and general compensatory damages.

WHEREFORE, for the foregoing reasons, Plaintiff, Deborah Wilson requests that this Court enter judgment in her favor and against Defendant Village of University Park in an amount to be proved at trial, including all benefits and pay Wilson would have received but for the Village's retaliation, including prejudgment interest; compensatory damages in an amount to be determined at trial up to $300,000; a permanent injunction enjoining it from engaging in the discriminatory practices complained of herein; that this Court retains jurisdiction of this case until it is assured that the Village has remedied the policies and procedures complained of herein and is determined to be in full compliance with the law; damages for actual emotional distress caused by the Village's actions and omissions; an award of reasonable attorneys' fees, costs, and litigation expenses; and, such other relief as this Court may deem just.

**COUNT II – IHRA BASED ON RETALIATION**
**Wilson v. Village of University Park, Illinois**

**82.** Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

83. IHRA makes it a civil rights violation for any employer to discharge or discipline any employee based on unlawful discrimination and retaliation.

84. 775 ILCS 5/6-101(A) provides an action for damages in favor of anyone whose rights in employment have been violated.

85. Defendant Village has employed 15 or more employees within Illinois during 20 or more calendar weeks within the current and preceding relevant calendar years and, therefore, is an employer within the meaning of IDHR.

86. Wilson was employed as a police officer with Defendant University Park and therefore was an employee within the meaning of the IHRA.

87. Defendants retaliated against Wilson for asserting her right to oppose sexual harassment in the Kitching matter, to press charges against the Golf Course manager and its employee, and to object to the questionable spending and conduct of Village officials in violation of 775 ILCS 5/2-102(A).

88. Witnessing another employee's sexual harassment complaint and opposing or questionably illegal activity are protected activities under 775 ILCS 5/6-101.

89. Wilson reasonably and in good faith believed that actions taken by Defendants were in retaliation for her protected activity and pursued or reported such conduct as described above.

90. After Wilson opposed unlawful conduct described above, Defendants Beck-Fulgham, Roudez III, and other unknown employees retaliated against Wilson as alleged herein.

91. Defendant Village, by the acts and omissions by its agents and employees as pled in this Complaint, retaliated against Wilson based on said protected activity in violation of the Illinois Human Rights Act.

92. After Wilson opposed such unlawful conduct, the Village took no action to address or to stop the retaliatory acts that Beck-Fulgham, Roudez III, and other Village employees subjected Wilson to, nor did it enforce any policy of anti-retaliation or harassment related to the same.

93. The reasons for Wilson's removal as police chief and termination as a police officer were pretextual.

94. The Village's wrongful acts, by and through its agents, were deliberate, willful, wanton, malicious, oppressive, and in total disregard and reckless indifference to Wilson's civil rights.

95. As a direct and proximate cause, Wilson has suffered significant damages, including injury to her career and reputation, loss of employment, lost income, including back pay, front pay, loss of future earnings, benefits, and other incidentals of employment, embarrassment, humiliation, and damage to her reputation, and other non-pecuniary losses for which she is entitled to compensatory and other damages under 775 ILCS 5/6-101(A).

WHEREFORE, Plaintiff, Deborah Wilson respectfully prays for a judgment in her favor against Defendant Village of University Park with an award for such damages as may be proven at the time of trial, including reinstatement, back pay, front pay, wage differential, lost benefits, out-of-pocket pecuniary losses, reasonable attorney's fees, costs, expert witness fees, compensatory damages, pre-and post-judgment interest, and such other relief as this Court may deem appropriate.

## COUNT III –DUE PROCESS VIOLATION (Board of Trustees)
## Plaintiff v. Defendants Village and Beck-Fulgham

96. Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

97. Wilson had a protected property interest in her position as police chief under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Illinois Constitution of 1970, art. 1, §2, and the Village ordinances.

14

98. Beck-Fulgham violated Wilson's due process rights by not providing the Trustees with a statement of charges seeking Wilson's removal, never allowing Wilson to appear before the Trustees in her defense, and in no other way providing Plaintiff with an opportunity to be heard, in violation of the due process clause of the United States Constitution, amendment XIV, and the Illinois Constitution of 1970, article 1, § 2.

99. Because of the infirmities in Beck-Fulgham's April 1, 2022, termination letter, Beck-Fulgham never filed a statement of charges seeking Wilson's removal as police chief, which renders Wilson's "removal" ineffective.

100. On belief, Beck-Fulgham, not the Board of Trustees, denied Wilson's right to a hearing.

101. Neither Defendant Village nor Beck-Fulgham has the authority to deny Wilson such process.

102. As a direct and proximate result of the Defendants' actions, Wilson has been deprived of a recognized property interest protected by the Fifth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. 1983.

WHEREFORE, Plaintiff, Deborah Wilson respectfully requests that this Court enter an order against Defendants Village and Beck-Fulgham rescinding her removal as police chief and reinstating her as police chief; to be made whole for all losses, including back pay, and back benefits with interest, pension losses; compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendants Village's and Beck-Fulgham's conduct; a declaratory judgment that Defendants Village's and Beck-Fulgham's actions violate 42 U.S.C. §1983; and any other relief that this Court deems just and equitable. Such back pay continues from the start date of April 5, 2022.

### COUNT IV VIOLATION OF CIVIL RIGHTS – DUE PROCESS (BOFPC)
### Plaintiff v. Defendants Village and Beck-Fulgham

103.    Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

104.    Defendant, Village's Board of Fire and Police Commissioners (hereinafter the "Board"), is a statutorily created administrative agency under 65 ILCS 5/10-2.1-1 *et seq*.

105.    Wilson had a protected property interest in her position as a police officer under the Due Process Clause of the Fourteenth Amendment.

106.    Wilson's property interest derives from Illinois law, BOFPC's Rules, and Village ordinances.

107.    Wilson was on furlough from the rank of sergeant because her appointment to police chief occurred before she was eligible to retire and collect her pension. § 5/10–2.1–4 ("if a member of the department is appointed chief of police before being eligible to retire on pension, she shall be considered as on furlough from the rank she held immediately before her appointment").

108.    As a sergeant, Wilson was entitled to a "just cause" termination before an impartial BOFPC within 30 days of any written charges filed against her and an opportunity to be heard.

109.    "Cause" in Illinois has been defined as "some substantial shortcoming which renders [the employee's] continuance in her office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for her no longer occupying the place."

110.    Defendant Beck-Fulgham never filed a statement of charges seeking Wilson's termination as a police officer to establish the requisite "cause" as required by statute.

111.    On belief, Beck-Fulgham, not the BOFPC, denied Wilson's right to a hearing.

112.    Defendant Beck-Fulgham lacks authority to unilaterally terminate Wilson without "just cause" and without providing her the requisite process as described above.

113.    No hearing ever occurred before the BOFPC in any official proceeding or final order rendering Wilson's termination as a police officer ineffective and in violation of federal law, state law, and Village ordinance, and therefore should be rescinded.

WHEREFORE, Plaintiff, Deborah Wilson respectfully requests that this Court enter an order against Defendants Village and Beck-Fulgham rescinding her termination and reinstating her into her position as a sergeant; to be made whole for all losses, including back pay, and back benefits with interest, pension losses; compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendants Village's and Beck-Fulgham's conduct; a declaratory judgment that Defendants Village's and Beck-Fulgham's actions violate 42 U.S.C. §1983; and any other relief that this Court deems just and equitable. Such back pay continues from the start date of April 5, 2022.

### COUNT V – WRIT OF MANDAMUS – (State Law Claim)
#### Wilson v. Village of University Park, Illinois

114.    Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

115.    Mandamus is an extraordinary civil remedy that will be granted to enforce, as a matter of right, the performance of official nondiscretionary duties by a public officer. *Lee v. Findley*, 359 Ill.App.3d 1130, 1133, 296 Ill.Dec. 632, 835 N.E.2d 985 (2005).

116.    Pursuant to both Illinois law and Village ordinance, Beck-Fulgham had authority and a clear duty to properly remove Wilson as police chief by filing a statement of charges before the Board of Trustees, allowing Wilson an opportunity to be heard, and after garnering a majority vote by the Board of Trustees.

117.    If the majority of the Board voted to remove Wilson as police chief, it would then refer the matter to the BOFPC to determine if any further sanction of 30 days or termination was warranted.

17

118.    Wilson seeks a writ of mandamus to compel the Village to restore her to the position of police chief because she was not correctly removed from that position.

119.    Alternatively, Wilson also seeks a writ of mandamus to compel the Village to restore her to the rank of sergeant should this Court find that she was removed correctly as police chief.

120.    Defendant Village has failed to fulfill such duties by refusing Wilson's requests to provide her a hearing before the Trustees for removal as a police chief and also to provide her with a fair and impartial hearing before the BOFPC regarding her termination as a police officer. *Baldacchino v. Thompson*, 289 Ill.App.3d 104, 109, 224 Ill.Dec. 621, 682 N.E.2d 182 (1997).

121.    Defendant Village is without legal authority and acting contrary to Illinois law by both removing her as police chief and by terminating her as a police officer without any due process rights.

122.    Defendant Village refused Wilson's requests for a hearing to adjudicate the appeal of (1) her removal as police chief and (2) her termination as a police officer.

123.    Defendant Village is also without legal authority and acting contrary to Illinois law by withholding payment of salary and benefits earned by Wilson without notice, charges, or a hearing being held before the Board of Trustees and the BOFPC.

124.    Under §5/14·101 of the Code of Civil Procedure, this Court is vested with the power to grant Plaintiff a Writ of Mandamus enforcing these nondiscretionary Acts on the part of the Board of Trustees and BOFPC and grant such other relief to enforce those rights.

125.    Wilson has no other adequate remedy at law other than to compel both the Board of Trustees and the BOFPC to comply with the applicable provisions of the Municipal Code by invoking the equitable jurisdiction of this Court.

126.    The denial of a hearing before the Board of Trustees is properly remedied through mandamus because Wilson has established that (1) she has an explicit right to notice of a statement of charges that are brought before the Board of Trustees, (2) this is a clear duty on the part of both Defendant Beck-Fulgham and the Board of Trustees to conduct a vote and opportunity for Wilson to rebut the charges, and (3) clear authority exists in the both Beck-Fulgham and the Board of Trustees to comply with an order granting mandamus relief.

127.    The denial of a hearing before the BOFPC is properly remedied through mandamus because Wilson established that (1) she has a clear right to a hearing before the BOFPC, (2) this is a clear duty on the part of the BOFPC to conduct the hearing, and (3) clear authority exists in the BOFPC to comply with an order granting mandamus relief.

WHEREFORE, Plaintiff, Deborah Wilson respectfully requests that this Court find in her favor on this Count and against Defendant Village and restore her position as a police officer and also reinstate her as police chief, where she will then be provided with proper notice of charges and an opportunity to be heard before the Board of Trustees before she is removed as police chief. If she is removed as police chief, any subsequent disciplinary recommendations are properly brought before the BOFPC where Wilson will be subject to a fair and impartial hearing pursuant to law.

### COUNT VI—42 U.S.C. § 1983 CLAIM FOR DEPRIVATION OF 1ST AMENDMENT RIGHTS & FOR WRONGFUL TERMINATION OF EMPLOYMENT
### Wilson v. All Defendants

128.    Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

129.    The First Amendment to the United States Constitution guarantees Plaintiff's right to speak on matters of public concern free from retaliation.

130.    As described more fully above and incorporated by reference herein, Plaintiff engaged in extensive protected speech on matters of public concern, including, but not limited to, publicly

opposing the sexual harassment of Ms. Kitching, filing EEOC charges, and contacting the Will County State's Attorney's Office and F.B.I. that implicated both Defendant Beck-Fulgham's and Roudez' III unlawful conduct and mismanagement of taxpayer dollars.

131.    As a result of Plaintiff's protected activities, Defendants retaliated against her in the manner described in the preceding paragraphs.

132.    Defendants intended by each of the actions described in the preceding paragraphs to punish, retaliate, and deter Wilson's exercise of her First Amendment Rights.

133.    Wilson has suffered harm due to the Defendants' actions and has been deprived of her rights secured under the First Amendment to the United States Constitution under §1983.

134.    Wilson had no job purpose for her speech, no self-interest for her speech and associational activity, and her speech occurred through acts outside the line of duty.

135.    Wilson's interest in acting as a citizen and in testifying on the actions of the administrators support her claim to the constitutional protection of her First Amendment freedom of speech.

136.    Wilson's protected activity was a substantial or motivating factor in the actions taken against her, both by the Village and by individual Defendants.

137.    Beck-Fulgham, as the Manager of the Village of University Park, is a final policymaker for the Village because she oversees all operations of the Village and has authority over significant matters involving the exercise of discretion.

138.    Such retaliation constitutes a municipal policy and widespread practice of the Village to retaliate against employees who complain of misconduct regardless of the truth of such claims.

139.    These deprivations of federal rights caused Wilson to suffer, and she will likely continue to suffer grievous harm including substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and continued emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court enter judgment in her favor and against Defendants in an amount to be proved at trial, including for lost pay and benefits, general compensatory, special, consequential damages, for emotional distress and reputational harm, for attorneys' fees under 42 U.S.C. § 1988, as well as order University Park to reinstate Wilson as both a police officer and police chief and provide her with full make-whole relief, and for all such other relief to which she is entitled and the Court deems just and proper.

## COUNT VII – 42 U.S.C. § 1983 DEPRIVATION BASED ON RETALIATION
### Wilson v. All Individual Defendants

**140.** Plaintiff realleges each paragraph of this Complaint as if fully restated here.

**141.** The 14th Amendment to the United States Constitution guarantees the Plaintiff the right to be free from retaliation for protected activity.

**142.** Because of Wilson's exercise of protected activity, individual Defendants retaliated against Wilson by subjecting her to conduct described throughout the complaint, including improperly stripping her police duties, unlawfully removing her as police chief, terminating her without just cause, targeting her son for purported illegal activity, and spreading false rumors that Wilson had an extramarital affair, each alone, would be enough to deter a reasonable employee from engaging in protected activity or opposing unlawful activity.

**143.** Both Beck-Fulgham and Roudez III acted under color of law, through their state-based actions, and directly or personally spearheaded or specially attended to Wilson in the ways alleged throughout this Complaint. The misconduct described above was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**144.** For example, despite Beck-Fulgham's initial auspices of an internal investigation into Wilson's purported misconduct, a closer examination of her conduct reveals the retaliatory underbelly that tainted the entire investigation by:

**a)** Improperly usurping both the Board of Trustees and the BOFPC's authorities by terminating Wilson using the April 1, 2022 "retire or be fired" letter;

**b)** Disregarding Village Ordinance and state law that require Beck-Fulgham to file a statement of reasons justifying Wilson's removal as police chief, and then correctly putting the matter to a majority vote before the Board of Trustees;

**c)** Using the Peace Officer Disciplinary Act to compel Wilson's testimony during her interrogation, using the compelled testimony as grounds for termination without ever filing charges against Wilson with the Villages' Board of Fire and Police Commission within 30 days as required by law; and

**d)** Not referring the matter to a fair and impartial hearing before the BOFPC or establishing a just cause basis for termination.

**145.** The retaliation against Wilson was part of the Village's custom, policy, and practice and its policymakers to punish such employees that investigated or complained of misconduct by other officers in violation of 42 U.S.C. § 1983.

**146.** As a result, Plaintiff has suffered monumental injuries, *to wit*, subjection to a sham investigation, never having the opportunity be heard before any Board, improper removal as police chief, and improper termination from her job as a police officer and corresponding loss of pay, benefits, reputational damage, humiliation, and a garden variety of emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff, Deborah Wilson requests that this Court enter judgment in her favor and against each of the individual Defendants in an amount to be proved at trial, including for lost pay and benefits, compensatory, special, consequential damages, for non-economic emotional distress and reputation harms, for attorneys' fees under 42 U.S.C. § 1988, and

order the Village to reinstate Wilson to her position and benefits with full make-whole relief, and for all such other relief to which he is entitled, and the Court deems just and proper.

## COUNT VIII—MONELL CLAIM
### Wilson v. Village of University Park, Illinois

147.    Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

148.    Defendant Beck-Fulgham was the Manager of the Village and was a final policymaker.

149.    Defendant Village trivializes, ignores, and imposes arbitrary and capricious penalties upon employees for alleged misconduct without any regard for consistency in recommending or imposing discipline, without regard for federal law, state law, or its ordinances.

150.    As a matter of widespread practice so prevalent as to be a municipal policy, those who have dared to oppose the Administration experienced retaliation like that alleged by Plaintiff.

151.    The Village has a history of blacklisting and retaliating against employees who question leadership, report misconduct, or go against the Administration.

152.    The prior police chief, Ed Bradley, filed suit alleging unlawful termination. *Bradley v. Village of University Park*.

153.    Wilson previously sued University Park for due process violations because its BOFPC ignored state law before and after her disciplinary proceedings and gave her no process at all. *Wilson v. University Park Bd. of Fire & Police Comm'rs*, No. 15 C 7425, 2016 WL 147916 (N.D. Ill. January 13, 2016).

154.    Defendant Beck-Fulgham, as a final policymaker for the Village, retaliated against Wilson for exercising her rights under Title VII and IDHR as described above.

155.    Defendant Roudez III, as a final policymaker for the Village, retaliated against Wilson for exercising her rights under Title VII and IDHR as described above.

156. The Village set upon a concerted course of unlawful conduct, forcing Wilson out of her position as police chief and as a police officer by relying on ginned-up, trumped-up, bases that were pretextual litigation figments to justify removing her as police chief.

157. On belief, additional examples of misconduct will be uncovered after a reasonable opportunity to conduct discovery related to the Village's disciplinary practices and policies and its disproportionate enforcement of said practices and procedures.

158. Because the Village employed the foregoing express acts espoused by the Village through both Beck-Fulgham and Roudez III to retaliate against Wilson, she suffered harm including, without limitation, loss of career and reputation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff, Deborah Wilson requests that this Court enter judgment in her favor and against Defendant Village in an amount to be proved at trial, including for lost pay and benefits, general compensatory, special, and consequential damages, for emotional distress and reputational harm, for attorneys' fees under § 1988, as well as order the Village to reinstate Wilson both as a police officer and police chief, restore her benefits with full make-whole relief, and for all such other relief to which she is entitled and the Court deems just and proper.

### COUNT IX – VIOLATION OF THE WHISTLEBLOWER ACT (740 ILCS §174/1)
### Wilson v. All Defendants

159. Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

160. Wilson engaged in protected activity as alleged throughout the Complaint including opposing Defendant's unlawful conduct to the Will County State's Attorney's Office, F.B.I., the EEOC, and the Illinois Department of Human Rights. See 740 ILCS 174/15(b).

161. After Wilson spoke out as alleged in the preceding paragraphs, Defendants retaliated against her by stripping her of her responsibilities and access, removing her as police chief,

terminating her as a police officer without just cause, targeting her son with made-up charges, and spreading false and malicious lies about her. Each of these actions constitutes a materially adverse employment action that altered the terms and conditions of her employment.

162.    When Defendants subjected Plaintiff to the aforementioned materially adverse employment actions, each of the Defendants was aware of her complaints. *See Spalding v. Village*, 186 F. Supp. 3d 884, 918 (N.D. Ill. 2016) (denying the motion for summary judgment where a reasonable jury could infer that Plaintiff was retaliated against for blowing the whistle on police corruption even when the defendants denied knowing that Plaintiffs were whistle-blowers).

163.    Defendants were prohibited from retaliating against Plaintiff for engaging in the aforementioned protected activity, including reporting clear public policy mandates.

**COUNT X – REPLEVIN (State Law Claim)**
**Wilson v. Defendant Village, unknown Village employees**

164.    Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

165.    Beck-Fulgham barred Wilson from entering the police department during her leave, preventing Wilson from retrieving the property in her office for more than four months.

166.    During Wilson's administrative leave, Defendant barred Wilson from entering her office, even though various unknown individuals had unfettered access to rifle through her office.

167.    When Wilson finally received the personal property from her office after she was unlawfully terminated discovered that several pieces of property were missing, including:

   a)   Two Glock guns and two Glock magazines (.45 caliber Glock and .40 caliber Glock);

   b)   Personalized rifle dust cover;

   c)   Awards and certificates, paperwork, daily planner, binders, USB drives, and law books;

   d)   Leather police jacket, police raincoat, shooting glasses, shooting electronic earmuffs; and

**e)** Cash.

**168.** Various unknown Village employees have wrongfully detained Wilson's property.

**169.** Wilson's property has not been taken for taxes, assessments, or fines levied by any state or federal law, nor seized under any execution or attachment against her chattels, nor held by any writ of replevin against Wilson.

**170.** Wilson never authorized anyone to borrow, hold, or have said property.

**171.** The property's value is more than $5,000 and has sentimental attachment.

WHEREFORE, Plaintiff, Deborah Wilson, asks that a writ of replevin be issued and for judgment against Defendant Village for a) possession of the property; b) the value of property not delivered; c) damages for the detention.

## COUNT XI—VIOLATION OF ILLINOIS WAGE PAYMENT & COLLECTION ACT
### Wilson v. Defendant Village

**172.** Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

**173.** According to Village Ordinance, Wilson is entitled to severance pay equal to four (4) months of her regular salary, constituting a binding and enforceable contract supported by valuable consideration defined under the Illinois Wage Payment and Collection Act.

**174.** Wilson performed all conditions precedent and other obligations required under the Agreement. She was not convicted of any felony or crime involving moral turpitude, and she was not fired for any "just cause" reason before a proper adjudicating body.

**175.** As such, no legally appropriate termination occurred, and Wilson's right to her salary and benefits has never abated, including Wilson's remaining 144 hours of floating holiday time, accrued sick time, personal days, and 200 hours of banked vacation time.

**176.** On or about May 2022, Wilson timely demanded payment on such benefits.

177.   As of the filing date, Defendant Village has not paid Wilson's earned severance or any of her accrued compensatory time in violation of the Act.

WHEREFORE, Plaintiff, Deborah Wilson prays that this Court finds Defendant Village liable for (a) All lost wages, benefits, and other amounts resulting from its violations of the IWPCA; (b) Statutory penalties in the amount of two percent per month; (c) costs, attorneys' fees, and all other relief available under the IWPCA; and (d) such other relief as the Court deems just and proper.

### COUNT XII – INDEMNIFICATION
**Wilson v. Defendant Village**

178.   Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

179.   Defendant Village is obligated to assume financial responsibility for the actions committed by its officials or employees.

WHEREFORE, for the foregoing reasons, Plaintiff, Deborah Wilson requests that this Court enter judgment in her favor and against Defendant Village and order it to indemnify any other Defendant in this matter.

### COMMON PRAYER FOR RELIEF

WHEREFORE, and that there is sought, Plaintiff, Deborah Wilson, prays that this Court:

a)  Conduct a mediated settlement conference or refer the case to its court-annexed mediation program to assist the parties to bring about a settlement of this case;

b)  Enter judgment in the Plaintiff's favor and against Defendants;

c)  Order affirmative relief necessary to eradicate the effects of the Defendants' unlawful employment practices;

d)  Award the Plaintiff actual damages suffered to the extent permissible by law to compensate the Plaintiff for injuries and losses caused by Defendants' conduct;

**e)** Award the Plaintiff compensatory damages to the extent permissible by law to compensate the Plaintiff for injuries and losses caused by Defendants' conduct;

**f)** Award Plaintiff exemplary damages to the extent permissible by law against the individual defendants only;

**g)** Award the Plaintiff prejudgment interest on these damages;

**h)** Grant court costs and reasonable attorneys' fees under 42 U.S.C. § 1988, § 2000(e), §18 U.S.C. § 2724(b)(3), and other applicable law; and,

**i)** Grant additional relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

**180.** Plaintiff, Deborah Wilson, demands a trial by jury on all issues so triable.

Respectfully Submitted,

Deborah Wilson

s/ Gianna Scatchell
s/ Ellie Kozlowski

By:_____
Plaintiff's Attorney

Dated: March 3, 2023

Gianna Scatchell, Esq.
Ellie Kozlowski, Esq.
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 330
F: (312) 846-6363
E: Gia@dispartilaw.com
E: Ellie@dispartilaw.com

## CERTIFICATE OF SERVICE

28

The undersigned attorney certifies that he served the foregoing document on all counsel of record via this Court's CM/ECF filing system on March 3, 2023, and that such counsels are all registered e-filers.

By:     s/ Gianna R. Scatchell