**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DEBORAH WILSON,           ) | |
|                      ) | |
|      Plaintiff,        ) | |
|                      ) | |
| v.                    ) | Case No. 22-cv-06020 |
|                      ) | |
| ERNESTINE B. BECK-FULGHAM, both  ) | |
| ind. and in her official capacities as Village  ) | |
| Manager, JOSEPH ROUDEZ III, both    ) | **Jury Trial Demanded** |
| Ind. and his official capacities as Mayor, and  ) | |
| UNIVERSITY PARK,            ) | |
|                      ) | |
|      Defendants.     ) | |

## <u>ANSWER TO PLAINTIFF'S AMENDED COMPLAINT</u>

NOW COMES Defendants, Ernestine Beck-Fulgham, Joseph Roudez III, and the Village of University Park, by and through their attorneys of Ottosen DiNolfo Hasenbalg & Castaldo, Ltd., and, for their Answer to Plaintiff's Amended Complaint,[1] state as follows:

### <u>NATURE OF THE CASE</u>

1.     Wilson was a veteran police officer and the first female police chief in the Village of University Park. She was battered by the Village Golf Course's Manager and employee. Wilson's problems with the Village began when she refused to drop the charges for battery against the Golf Course manager and employee and opposed the Defendants' unlawful conduct and mismanagement of Village funds. Defendants retaliated against Wilson by stripping her of her supervisory rights, barring her from Village property, stealing her duty guns and other property, and violating her due process rights by unlawfully removing her as police chief and terminating her from the police department without "just cause."

---

[1] On February 10, 2023, the Court ordered Plaintiff to file a motion for leave to file an amended complaint by March 3, 2023. (Dkt. # 18). Plaintiff did not file such a motion, but instead merely filed her amended complaint. (Dkt. # 20). Nor did Defendants agree in writing to Plaintiff filing an amended complaint. Defendants therefore object pursuant to Rule 15(a). By filing this Answer, Defendants desire merely to comply with Rule 15(a)(3)'s required time to respond, and do not waive their objections under Rule 15(a).

**ANSWER:** **Defendants admit that Wilson had been a police officer and the first female fire chief of the Village of University Park. Defendants deny the remaining allegations contained in Paragraph 1 of Plaintiff's Complaint.**

## JURISDICTION AND VENUE

2.      Jurisdiction over the federal claims arises under 42 U.S.C. §§ 1983, 1988, 28 U.S.C. §§ 1331, 1343, and the First, Fifth, and Fourteenth Amendments to the United States Constitution, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*

**ANSWER:** **Defendants admit the Court has original jurisdiction over Plaintiff's federal claims.**

3.      The Court also has jurisdiction over the state law claims asserted in this action under 28 U.S.C. § 1367 because the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:** **Defendants admit the Court has supplemental jurisdiction over Plaintiff's state law claims.**

4.      Venue is proper in this Court because Defendants' acts complained of occurred in University Park, Illinois, Will County, which is within the jurisdictional boundaries of this Court.

**ANSWER:** **Defendants admit venue is appropriate in this Court.**

## PARTIES

5.      Plaintiff, Deborah Wilson (hereafter "Plaintiff" or "Wilson"), is a resident of the Village of University Park, Illinois. She was employed as a full-time Village police officer from 1999 until her wrongful termination on or about April 5, 2022.

**ANSWER:** **Defendants deny Plaintiff was wrongfully terminated and that Plaintiff was a "full-time Village police officer" at the time of her termination. Defendants admit all remaining allegations in Paragraph 5 of Plaintiff's Complaint.**

6.      Wilson's place of employment was the Village of University Park, Police Station, 650 Burnham Drive, which is in Will County, Illinois.

**ANSWER:      Defendants admit that Plaintiff's usual duty station was the Village of University Park, Police Station, 650 Burnham Drive, which is in Will County, Illinois.**

7.      Defendant Ernestine Beck-Fulgham ("Beck-Fulgham") was appointed as the Village Manager. She is a final policymaker at all times relevant. She engaged in the conduct complained of while acting under the color of law. She is sued in her official and individual capacities.

**ANSWER:      Defendants admit that Beck-Fulgham was, at all relevant times, the University Park Village Manager, and deny all remaining allegations contained in Paragraph 7 of Plaintiff's Complaint.**

8.      Defendant Joseph Roudez III ("Roudez") is an elected official serving as Mayor of the Village of University Park. He is a final policymaker. He engaged in the conduct complained of while acting under the color of law. He is sued in his official and individual capacities.

**ANSWER:      Defendants admit that Roudez was, at all relevant times, the elected Mayor of the Village of University Park, and deny all remaining allegations contained in Paragraph 7 of Plaintiff's Complaint.**

9.      Defendant, Village of University Park, Illinois (hereafter the "Village") is a manager-managed municipal corporation that operates as a home-rule unit of government.

**ANSWER:      Defendants admit the allegations contained in Paragraph 9 of Plaintiff's Complaint.**

10.      The Village has indemnification obligations for wrongful acts committed by its officials, employees, and agents. See 745 ILCS §§ 10/1-202 and 9-102. Accordingly, it is responsible for the challenged actions of the individual Defendants and the Village.

**ANSWER:      Defendants admit the duties imposed by 745 ILCS 10/1-202 and 9-**

102 and deny any allegation inconsistent therewith.

## EXHAUSTION OF ADMINISTRATIVE RELIEF

11.     On December 29, 2021, Wilson filed an inquiry with the Equal Employment Opportunity Office ("EEOC") alleging that Beck-Fulgham retaliated against her for refusing to manipulate her testimony, investigating improper or illegal Village conduct, refusing to void validly issued police tickets, and pressing charges against the Golf Course manager and employee.

**ANSWER:     Defendants lack sufficient knowledge or information to admit or deny the allegations contained in Paragraph 11 of Plaintiff's Complaint, as the Village was never served with any such EEOC charge.**

12.     From December 2021 to April 2022, Wilson reported the Defendants' unlawful conduct to the Will County State's Attorney's Office and the F.B.I.

**ANSWER:     Defendants lack sufficient knowledge or information to admit the allegations contained in Paragraph 12 of Plaintiff's Complaint.**

13.     On February 17, 2022, Wilson filed a supplemental charge with the EEOC, which was cross- filed with the IDHR based on discrimination and retaliation for her protected oppositional conduct in the Kitching sexual harassment matter, pressing charges in the Golf Course batteries, and reporting Beck-Fulgham's and Roudez' III's misconduct.

**ANSWER:     Defendants admit Wilson filed a supplemental charge with the EEOC on February 17, 2022, alleging—erroneously—discrimination and retaliation in relation to the Kitching sexual harassment matter, pressing charges in the Golf Course incidents, and reporting the conduct of Village employees.**

14.     The EEOC Charge Numbers are: 440-2022-02335 and 440-2022-03535.

**ANSWER:     Defendants admit the Charge Number for the February 17, 2022, Charge is 440-2022-03535. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations contained in Paragraph 14 of Plaintiff's Complaint.**

15.     On or about October 5, 2022, Wilson filed a supplemental charge with the EEOC, which was again cross-filed with the IDHR for discrimination and retaliation related to her removal as police chief and termination from the police department without due process.

**ANSWER:     Defendants admit that, on or about October 5, 2022, Wilson filed an** *amended* **EEOC charge (No. 440-2022-03535) alleging—baselessly—discrimination and retaliation related to her termination.**

16.     Wilson received the EEOC right-to-sue letter on or about February 6, 2023, a copy is attached hereto as Exhibit A.

**ANSWER:     Defendants admit that Wilson has a received right-to-sue letter.**

## FACTS COMMON TO ALL CLAIMS

### Chief Wilson's Background

17.     Wilson has an extensive and exemplary law enforcement background. She was the Village's first female police chief and the first African American female police chief in Will County.

**ANSWER:     Defendants admit Wilson was the first female police chief of the Village of University Park. Defendants deny Wilson has an "exemplary" law enforcement background. Defendants lack sufficient knowledge or information to determine whether Wilson was the first African American female police chief in the entirety of Will County.**

18.     In April 2020, Wilson rose through the ranks and was appointed the Village's police chief.

**ANSWER:     Defendants admit that Wilson was appointed the Village's police chief in April 2020.**

19.     Wilson's compensation as police chief included an annual salary of $125,000 and the following benefits: medical insurance; 200 vacation hours; 144 floating holiday hours; all Village- recognized holidays off; 10 hours of sick time per month, training, and a take-home vehicle.

**ANSWER:** **Defendants admit that Plaintiff's annual salary was $125,000 and that she was entitled to fringe benefits including but not limited to medical insurance, vacation time, holidays, and sick time.**

<u>**Four Events Leading to Wilson's Termination**</u>

20.    Four different events from November 2021 to December 2021 triggered this Complaint's filing.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 20 of Plaintiff's Complaint.**

<u>**Event 1 - Chief Wilson Witnesses the Village Manager Sexually Harassing an Employee**</u>

21.    Wilson's problems with the Village began when she agreed to testify on behalf of Village employee Keisha Kitching ("Kitching") in her sexual harassment claim against Beck-Fulgham.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 21 of Plaintiff's Complaint.**

22.    On or about October 27, 2021, the Board of Trustees placed Beck-Fulgham on involuntary administrative leave for failing to disclose the Kitching EEOC charge to the Board.

**ANSWER:** **Defendants admit only that Beck-Fulgham placed Plaintiff on paid administrative leave for failing to advise the Village Board of Trustees of various issues and deny the remaining allegations contained in Paragraph 22 of Plaintiff's Complaint.**

23.    On or about November 2021, Beck-Fulgham approached Wilson and improperly attempted to influence Wilson's future testimony.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 23 of Plaintiff's Complaint.**

24.    Wilson rebuffed this attempt, which, on belief, angered Beck-Fulgham.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 24 of**

Plaintiff's Complaint.

### Event 2 - Village Property is Missing from the Golf Course

25.     The Village owns the University Park Golf Club and Conference Center ("Golf Course"), an 18-hole championship golf course located within the city limits. Currently, C.H.W. Management Group L.L.C. leases the golf course from the Village.

**ANSWER:     Defendants admit the allegations contained in Paragraph 25 of Plaintiff's Complaint.**

26.     On belief, one of C.H.W.'s members, Sonia Coffee ("Coffee"), reportedly manages the Golf Course remotely from Ohio and is rarely on-premises.

**ANSWER:     Defendants deny the allegations contained in Paragraph 26 of Plaintiff's Complaint.**

27.     Village residents took issue with C.H.W.'s management and questioned why the Village paid C.H.W. over $800,000, which significantly exceeded its $14,000 in revenue.

**ANSWER:     Defendants deny the allegations contained in Paragraph 27 of Plaintiff's Complaint.**

28.     Current leaseholders, like C.H.W., maintained an unwritten understanding that the Village would store and retrieve its property from the Golf Course's garage.

**ANSWER:     Defendants admit that the Village would store certain property at the Golf Course from time to time and deny the allegations inconsistent therewith contained in Paragraph 28 of Plaintiff's Complaint.**

29.     On November 4, 2021, Public Works Director Darrell Byther ("Byther") and his foreman, Dontrell Brown, went to the Golf Course's garage to retrieve one of the Village's tire changers.

**ANSWER:     Defendants admit Public Works Director Byther and Foreman Brown went to the Golf Course on November 4, 2021. Defendants deny the remaining allegations contained in Paragraph 29 of Plaintiff's Complaint.**

30.     A CHW employee, Putman, told them that his Manager, Sonia Coffee, directed him not to allow any Village employees onto the property because they were trespassers. The situation escalated with Putman (a Caucasian male) calling Byther a "nigger."

**ANSWER:     Defendants admit that a CHW employee and/or Coffee instructed the Village employees to leave because they were trespassing. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations contained in Paragraph 30 of Plaintiff's Complaint.**

31.     Byther called Wilson and requested police assistance at the Golf Course.

**ANSWER:     Defendants Admit Wilson was called to the Golf Course. Defendants deny the remaining allegations contained in Paragraph 31 of Plaintiff's Complaint.**

32.     Even though Wilson arrived in full police uniform and her police vehicle, Putman denied Wilson access to the garage.

**ANSWER:     Defendants admit that Wilson, attired in her uniform and who had arrived in her police car, was denied access to the garage. Defendants deny the remaining allegations contained in Paragraph 32 of Plaintiff's Complaint.**

33.     Putman called Coffee and put the phone on speaker so that Wilson could talk to Coffee.

**ANSWER:     Defendants admit that Wilson and Coffee spoke via telephone. Defendants deny the remaining allegations contained in Paragraph 33 of Plaintiff's Complaint.**

34.     Coffee began yelling at Wilson, "Get out! Get out! None of you are allowed on the property. Y'all are trespassing!" Coffee disconnected the call.

**ANSWER:     Defendants admit Coffee informed Wilson that she and the other Village employees were trespassing. Defendants deny the remaining allegations contained in Paragraph 33 of Plaintiff's Complaint.**

35.     Coffee knew that Wilson was at the Golf Course but still called the Village police on Wilson and the public works employees.

**ANSWER:     Defendants admit Coffee called the Village of University Park Police Department to report the conflict and deny any allegations inconsistent therewith contained in Paragraph 33 of Plaintiff's Complaint.**

36.     Ultimately, Wilson and the public works' employees accessed the garage through an opening, and Byther discovered that the tire changer and other Village property were missing.

**ANSWER:     Defendants admit only that Wilson and the public works employees broke in to the storage barn by causing damage to a garage door. Defendants deny the remaining allegations contained in Paragraph 36 of Plaintiff's Complaint.**

37.     Wilson wrote a police report for the missing Village property.

**ANSWER:     Defendants admit Wilson wrote what purported to be a police report for missing Village property, but deny it is accurate or truthful.**

38.     Wilson spent the next two weeks investigating the theft of the Village property  and unsuccessfully attempted to identify Coffee.

**ANSWER:     Defendants admit Wilson "personally investigated" Coffee's identity and deny the remaining allegations contained in Paragraph 38 of Plaintiff's Complaint.**

39.     Wilson notified Beck-Fulgham about the incident and asked for her help. Beck-Fulgham refused to help Wilson and said she would not be involved with the matter even though it concerned missing Village property.

**ANSWER:     Defendants deny the allegations contained in Paragraph 39 of Plaintiff's Complaint.**

### Event 3 - Altercation at the Golf Course

40.     On December 16, 2021, Wilson drove past the Golf Course and noticed that

Coffee's vehicle was parked in the parking lot prompting Wilson to stop at the Golf Course to identify Coffee.

**ANSWER:** **Defendants admit that Wilson stopped at the Golf Course to seek out Coffee on December 16, 2021. Defendants deny the remaining allegations contained in Paragraph 40 of Plaintiff's Complaint.**

41.    Even though Wilson arrived in her police vehicle and in full police uniform, two golf course employees lied to Wilson and told her that Coffee was not at the Golf Course.

**ANSWER:** **Defendants admit Wilson arrived in her police vehicle and in full uniform. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations contained in Paragraph 41 of Plaintiff's Complaint.**

42.    Moments later, Wilson saw Coffee emerge from her office. When Wilson attempted to speak with Coffee, Coffee ran back into her office, while one of her employees, DeVaughn J. Mathus ("Mathus"), physically blocked Wilson from accessing Coffee.

**ANSWER:** **Defendants admit that Coffee tried to avoid Wilson and DeVaughn Mathus, another UPGC employee, tried to get between Coffee and Wilson. Defendants deny the remaining allegations contained in Paragraph 42 of Plaintiff's Complaint.**

43.    The situation escalated with Mathus and Coffee physically attacking Wilson, prompting her to request backup police units.

**ANSWER:** **Defendants admit only that Wilson attempted to place Coffee under arrest and scuffle ensued between Coffee, Wilson, and DeVaughn. Defendants deny the remaining allegations contained in Paragraph 43 of Plaintiff's Complaint.**

44.    The Golf Course's security camera system captured the batteries, as illustrated in the two photos below. On belief, these photo stills identify Coffee, Mathus, Wilson, and another golf course employee from the point of view of Coffee's interior office and its exterior vantage point.

**ANSWER:** **Defendants admit the Golf Course's security camera system**

**captured the scuffle, several modified stills of which are represented in Paragraph 44. Defendants deny the remaining allegations contained in Paragraph 44 of Plaintiff's Complaint.**

45.     On belief, Coffee called various Village officials, including Roudez III and Village trustees Lewis and Bolding, whom all appeared at the Golf Course shortly after the incident.

**ANSWER:     Defendants admit various Village officials learned of the incident and appeared at the Golf Course shortly after it happened.**

46.     Coffee and Mathus were charged with aggravated battery to a peace officer.

**ANSWER:     Defendants admit the allegations contained in Paragraph 46 of Plaintiff's Complaint.**

47.     On January 6, 2022, the Will County State's Attorney's Office indicted both Coffee and Mathus for felony aggravated battery to a police officer for pushing Wilson in an insulting or provoking nature, knowing that she was a peace officer performing her official duties. Coffee was also charged with misdemeanor resisting arrest. *People v. Sonya Coffee*, 2021CF001854.  The criminal cases are still pending.

**ANSWER:     Defendants deny "*the Will County State's Attorney's Office* indicted both Coffee and Mathus." Defendants admit that Coffee has been charged with Aggravated Battery to a Peace Officer and Resisting Arrest and DeVaughn Mathus has been charged with two counts of Aggravated Battery to a Police Officer, and that those matters remain pending in Will County Circuit Court as of the date of this Answer.**

**The Village's Multi-faceted Attack on Wilson**

48.     Later that day, Beck-Fulgham placed Wilson on an involuntary paid administrative leave "pending an [internal] investigation." (A copy of this letter is attached hereto as Exhibit A).

**ANSWER:     Defendants admit that Beck-Fulgham placed Wilson on paid administrative leave pending an investigation.**

49.     This involuntary leave occurred just hours after she was battered at the Golf Course and before the Village could have adequately investigated the matter.

**ANSWER:     Defendants admit Wilson was placed on paid administrative leave hours after the Golf Course incident so the Village could *subsequently* investigate the matter. Defendants deny the remaining allegations contained in Paragraph 49 of Plaintiff's Complaint.**

50.     As part of this leave, Beck-Fulgham suspended Wilson's police powers; prohibited Wilson from representing herself as a police officer or taking any action on behalf of the Village; ordered her to turn over her identification card, take-home vehicle, keys, duty weapons, and other Village equipment; prohibited Wilson from entering any non-public area of the Village including her office. (See prior Ex. A)

**ANSWER:     Defendants admit that, as part of her paid administrative leave, Wilson was restricted in the manner recited in Exhibit A to Plaintiff's Complaint and deny any allegation inconsistent therewith contained in Paragraph 50 of Plaintiff's Complaint.**

51.     On or about January 27, 2022, Wilson was ordered to appear at an interrogation according to the Illinois Peace Officer Disciplinary Act.

**ANSWER:     Defendants admit the allegations contained in Paragraph 51 of Plaintiff's Complaint.**

52.     On April 1, 2022, Beck-Fulgham sent Wilson a letter with an ultimatum to resign or be fired by April 5, 2022, due to "serious questions in her mind as to [Wilson's] ability to continue to serve as the Police Chief" (Copy of the 04/01 letter is attached as Ex. B).

**ANSWER:     Defendants admit the contents of the April 1, 2022, letter attached as Exhibit B to Plaintiff's Complaint and deny any allegation inconsistent therewith contained in Paragraph 52 of Plaintiff's Complaint.**

53.     On April 5, 2022, Wilson responded to Beck-Fulgham's letter rebutting her

unlawful efforts to remove her as both police chief and as a police officer and also requested a hearing before both the Board of Trustees and the BOFPC. (April 5th Letter is attached hereto as Ex. C)

**ANSWER:** **Defendants admit the contents of the April 5, 2022, letter attached as Exhibit C to Plaintiff's Complaint and deny any allegation inconsistent therewith contained in Paragraph 52 of Plaintiff's Complaint.**

54.    Defendants Beck-Fulgham and the Village ignored Wilson's letter and relied on Beck-Fulgham's unilateral decision to remove Wilson as police chief and terminate her as a police officer.

**ANSWER:** **Defendants admit Beck-Fulgham terminated Wilson and deny the remaining allegations contained in Paragraph 54 of Plaintiff's Complaint.**

**<u>Defendants Eviscerated Wilson's Procedural Due Process<br>Rights</u>**

***Violation 1 – Defendants Failed to Remove Wilson as Police Chief Properly***

55.    Illinois law establishes a process to appoint and remove a police chief in a home-rule municipality. 65 ILCS §§ 5/10-2.1-4, 2.1-17.

**ANSWER:** **Defendants admit the duties imposed by law and deny any allegation inconsistent therewith.**

56.    The Village Manager must file a statement of charges against the police chief outlining the reasons for such removal, which shall not become effective unless confirmed by a majority vote of the Trustees. §10-2.1-4.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 56 of Plaintiff's Complaint.**

57.    No police chief shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in her defense within 30 days of the charges filed. §10-2.1-17.

**ANSWER:** Defendants deny the allegations contained in Paragraph 57 of Plaintiff's Complaint.

58.     Before removing Wilson as police chief, Beck-Fulgham was required to file a statement of charges with the Board of Trustees with the reasons for removing Wilson. §10-2.1-4, 2.1-17.

**ANSWER:** Defendants deny the allegations contained in Paragraph 58 of Plaintiff's Complaint.

59.     Beck-Fulgham never filed the required charges against Wilson with the Board of Trustees in violation of §10–2.1–4.

**ANSWER:** Defendants deny any requirement that charges be filed against Wilson and thus deny the allegations contained in Paragraph 59 of Plaintiff's Complaint.

60.     As such, Beck-Fulgham improperly removed Wilson as police chief because she lacks authority under Illinois law to unilaterally remove Wilson. *Lane v. Vill. Of Heyworth*, 2019 I.L. App (4th) 180488, ¶ 23, 133 N.E.3d 1282, 1289.

**ANSWER:** Defendants deny the allegations contained in Paragraph 60 of Plaintiff's Complaint.

61.     Wilson was never allowed to be heard in her defense in violation of statute before removal.

**ANSWER:** Defendants deny the allegations contained in Paragraph 61 of Plaintiff's Complaint.

62.     The Village Board of Trustees held two regular meetings on March 8th and 22nd and did not vote on Wilson's removal as police chief at either meeting or in executive session.

**ANSWER:** Defendants admit the allegations contained in Paragraph 62 of Plaintiff's Complaint.

63.     Consequently, the Board of Trustees never even voted to remove Wilson as police chief in violation of §10–2.1–4.

**ANSWER:** **Defendants admit the Board of Trustees did not vote to remove Wilson, but deny the remaining allegations contained in Paragraph 63 of Plaintiff's Complaint.**

*Violation 2 – Defendants Fired Wilson without "Just Cause" and without any Hearing*

64.     The Village's Board of Fire and Police Commissioners ("BOFPC") is a statutorily created administrative agency created, which is vested with the authority to hire, promote, discipline, and discharge University Park police officers under §5/10-2.1-1.

**ANSWER:** **Defendants admit the allegations contained in Paragraph 64 of Plaintiff's Complaint.**

65.     As a full-time police officer, Wilson could not be terminated without establishing a "just cause" reason before the BOFPC.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 65 of Plaintiff's Complaint.**

66.     Wilson performed all the duties of a police officer satisfactorily.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 66 of Plaintiff's Complaint.**

67.     The police chief can only suspend an officer for five days or less without providing written notice to the BOFPC. (5/10-2.1-17).

**ANSWER:** **Defendants admit the duties imposed by law and deny any allegations inconsistent therewith contained in Paragraph 67 of Plaintiff's Complaint.**

68.     Upon such written charges filed by the police chief, the BOFPC maintains authority to discharge or suspend an officer for up to 30 days.

**ANSWER:** **Defendants admit the duties imposed by law and deny any allegations inconsistent therewith contained in Paragraph 68 of Plaintiff's Complaint.**

69.     Beck-Fulgham was not the police chief of the Village of University Park

**ANSWER:** **Defendants admit the allegations contained in Paragraph 68 of**

Plaintiff's Complaint.

70.     Beck-Fulgham, in violation of state law, unilaterally terminated Wilson as a police officer by operation of the April 1, 2022 letter.

**ANSWER:     Defendants deny the allegations contained in Paragraph 70 of Plaintiff's Complaint.**

71.     Beck-Fulgham never brought charges to the BOFPC seeking Wilson's termination as a police officer or any other form of disciplinary action against her in violation of § 5/10–2.1–17.

**ANSWER:     Defendants admit the allegations contained in Paragraph 68 of Plaintiff's Complaint, but deny that Beck-Fulgham was ever required to bring such charges in the first instance.**

72.     Wilson cannot seek administrative review of her termination because Beck-Fulgham, as the Village Manager, is not an administrative body defined by the Illinois Administrative Review Act, and there was never a hearing before an administrative body to review.

**ANSWER:     Defendants admit that Beck-Fulgham is the Village Manager. Defendants admit the duties imposed by the Illinois Administrative Review Act and deny any allegations inconsistent therewith contained in Paragraph 72 of Plaintiff's Complaint.**

73.     If not approved, the BOFPC's decision is neither valid nor final. *Baldermann v. Bd. Of Trustees of the Police Pension Fund, Vill. of Chi. Ridge*, 2015 I.L. App (1st) 140482 ¶¶ 31- 34.

**ANSWER:     Defendants admit the duties imposed by law and deny any allegations inconsistent therewith contained in Paragraph 73 of Plaintiff's Complaint.**

74.     Wilson received **no process** regarding her termination as a police officer in violation of §5/10-2.1–17.

**ANSWER:** Defendants deny the allegations contained in Paragraph 74 of Plaintiff's Complaint.

**COUNT I—42 U.S.C. § 2000e(3)(a) RETALIATION**
**Wilson v. Village of University Park, Illinois**

75. Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

**ANSWER:** Defendants incorporate by reference their answers to said paragraphs.

76. At all times relevant, Defendant Village has been an Employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. 2000e, et seq., in that it has been in an industry affecting commerce employing fifteen or more employees for each working day for each of twenty or more calendar weeks in the year before this Complaint filed.

**ANSWER:** Defendants admit the Village was an "employer" within the meaning of Title VII.

77. At all times relevant, Wilson was an employee within the meaning of Title VII.

**ANSWER:** Defendants admit the allegations contained in Paragraph 77.

78. Wilson engaged in conduct protected by Title VII, including, but not limited to, opposing unlawful and discriminatory practices toward the Village, pressing charges against the Golf Course Manager and employee, and refusing to alter her testimony to favor Beck-Fulgham.

**ANSWER:** Defendants deny the allegations contained in Paragraph 78.

79. At all times relevant, Defendant Village, by its officials, agents, and employees, was aware of Wilson's protected activity and oppositional conduct based on the foregoing allegations.

**ANSWER:** Defendants deny the allegations contained in Paragraph 79.

80. Specifically, within days of the Defendants learning about Wilson's protected activities, Defendant Village, by its officials, agents, and employees, took adverse actions

against Wilson that "might well" dissuade a reasonable worker from making or supporting a charge of retaliation in violation of 42 U.S.C. 2000e-3(a) in the following ways:

a) Placing Wilson on involuntary leave and initiating an internal investigation within hours of the Golf Course battery before any meaningful investigation could have occurred;

b) Improperly removing Wilson as police chief without the requisite process;

c) Terminating Wilson as a police officer without "just cause" and without an opportunity to be heard before the BOFPC as described above;

d) Falsely accusing Wilson's son, an employee of the Village's public works department, of smoking marijuana in a Village vehicle; and

e) Allowing Village administrators like Beck-Fulgham and Roudez III to spread several false and defamatory statements accusing Wilson of having an extramarital affair with Darrell Byther without impunity. See Robinson v. Shell Oil Co., 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); Abdullahi v. Prada U.S.A. Corp., 520 F.3d 710, 713 (7th Cir.2008); Grayer v. Welch, No. 09 C 3924, 2011 WL 4578373, at *11–12 (N.D. Ill. September 30, 2011).

**ANSWER:** **Defendants deny the allegations contained in Paragraph 80, including subparagraphs (a)-(e).**

81. As a direct and proximate result of Defendant Village's unlawful actions, Wilson has suffered economic and non-economic damages, including lost pay, benefits, reputational damage, emotional distress, and general compensatory damages.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 81.**

**<ins>COUNT II – IHRA BASED ON RETALIATION –</ins>**
**Wilson v. Village of University Park, Illinois**

82. Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

**ANSWER:** **Defendants incorporate by reference their answers to said paragraphs.**

83.    IHRA makes it a civil rights violation for any employer to discharge or discipline any employee based on unlawful discrimination and retaliation.

**ANSWER:** **Defendants admit the duties imposed by law and deny any allegation inconsistent therewith.**

84.    775 ILCS 5/6-101(A) provides an action for damages in favor of anyone whose rights in employment have been violated.

**ANSWER:** **Defendants admit the duties imposed by law and deny any allegation inconsistent therewith.**

85.    Defendant Village has employed 15 or more employees within Illinois during 20 or more calendar weeks within the current and preceding relevant calendar years and, therefore, is an employer within the meaning of IDHR.

**ANSWER:** **Defendants admit the Village is an employer within the meaning of the Illinois Human Rights Act.**

86.    Wilson was employed as a police officer with Defendant University Park and therefore was an employee within the meaning of the IHRA.

**ANSWER:** **Defendants admit Plaintiff was an employee within the meaning of the IHRA.**

87.    Defendants retaliated against Wilson for asserting her right to oppose sexual harassment in the Kitching matter, to press charges against the Golf Course manager and its employee, and to object to the questionable spending and conduct of Village officials in violation of 775 ILCS 5/2-102(A).

**ANSWER:** **Defendants deny the allegations contained in Paragraph 87.**

88.    Witnessing another employee's sexual harassment complaint and opposing or questionably illegal activity are protected activities under 775 ILCS 5/6-101.

**ANSWER:** **Defendants admit all duties imposed by law and deny any allegation inconsistent therewith.**

89.     Wilson reasonably and in good faith believed that actions taken by Defendants were in retaliation for her protected activity and pursued or reported such conduct as described above.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 89.**

90.     After Wilson opposed unlawful conduct described above, Defendants Beck-Fulgham, Roudez III, and other unknown employees retaliated against Wilson as alleged herein.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 90.**

91.     Defendant Village, by the acts and omissions by its agents and employees as pled in this Complaint, retaliated against Wilson based on said protected activity in violation of the Illinois Human Rights Act.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 91.**

92.     After Wilson opposed such unlawful conduct, the Village took no action to address or to stop the retaliatory acts that Beck-Fulgham, Roudez III, and other Village employees subjected Wilson to, nor did it enforce any policy of anti-retaliation or harassment related to the same.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 92.**

93.     The reasons for Wilson's removal as police chief and termination as a police officer were pretextual.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 93.**

94.     The Village's wrongful acts, by and through its agents, were deliberate, willful, wanton, malicious, oppressive, and in total disregard and reckless indifference to Wilson's civil rights.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 94.**

95.     As a direct and proximate cause, Wilson has suffered significant damages, including injury to her career and reputation, loss of employment, lost income, including back pay, front pay, loss of future earnings, benefits, and other incidentals of employment, embarrassment, humiliation, and damage to her reputation, and other non-pecuniary losses for which she is entitled to compensatory and other damages under 775 ILCS 5/6-101(A).

**ANSWER:     Defendants deny the allegations contained in Paragraph 95.**

**COUNT III –DUE PROCESS VIOLATION (Board of Trustees)**
**Plaintiff v. Defendants Village and Beck-Fulgham**

96.     Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

**ANSWER:     Defendants incorporate by reference their answers to said paragraphs.**

97.     Wilson had a protected property interest in her position as police chief under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Illinois Constitution of 1970, art. 1, §2, and the Village ordinances.

**ANSWER:     Defendants deny the allegations contained in Paragraph 97 of Plaintiff's Complaint.**

98.     Beck-Fulgham violated Wilson's due process rights by not providing the Trustees with a statement of charges seeking Wilson's removal, never allowing Wilson to appear before the Trustees in her defense, and in no other way providing Plaintiff with an opportunity to be heard, in violation of the due process clause of the United States Constitution, amendment XIV, and the Illinois Constitution of 1970, article 1, § 2.

**ANSWER:     Defendants deny the allegations contained in Paragraph 98 of Plaintiff's Complaint.**

99.     Because of the infirmities in Beck-Fulgham's April 1, 2022, termination letter, Beck-Fulgham never filed a statement of charges seeking Wilson's removal as police chief,

which renders Wilson's "removal" ineffective.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 99 of Plaintiff's Complaint.**

100.    On belief, Beck-Fulgham, not the Board of Trustees, denied Wilson's right to a hearing.

**ANSWER:** **Defendants deny Wilson had a "right to a hearing" and thus deny the allegations contained in Paragraph 100 of Plaintiff's Complaint.**

101.    Neither Defendant Village nor Beck-Fulgham has the authority to deny Wilson such process.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 101 of Plaintiff's Complaint.**

102.    As a direct and proximate result of the Defendants' actions, Wilson has been deprived of a recognized property interest protected by the Fifth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. 1983.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 102 of Plaintiff's Complaint.**

## COUNT IV VIOLATION OF CIVIL RIGHTS – DUE PROCESS (BOFPC)
### Plaintiff v. Defendants Village and Beck-Fulgham

103.    Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

**ANSWER:** **Defendants incorporate by reference their answers to said paragraphs.**

104.    Defendant, Village's Board of Fire and Police Commissioners (hereinafter the "Board"), is a statutorily created administrative agency under 65 ILCS 5/10-2.1-1 *et seq*.

**ANSWER:** **Defendants admit the allegations contained in Paragraph 104 of Plaintiff's Complaint.**

105.    Wilson had a protected property interest in her position as a police officer under the Due Process Clause of the Fourteenth Amendment.

**ANSWER:    Defendants deny the allegations contained in Paragraph 105 of Plaintiff's Complaint.**

106.    Wilson's property interest derives from Illinois law, BOFPC's Rules, and Village ordinances.

**ANSWER:    Defendants deny the allegations contained in Paragraph 106 of Plaintiff's Complaint.**

107.    Wilson was on furlough from the rank of sergeant because her appointment to police chief occurred before she was eligible to retire and collect her pension. § 5/10–2.1–4 ("if a member of the department is appointed chief of police before being eligible to retire on pension, she shall be considered as on furlough from the rank she held immediately before her appointment").

**ANSWER:    Defendants deny the allegations contained in Paragraph 107 of Plaintiff's Complaint.**

108.    As a sergeant, Wilson was entitled to a "just cause" termination before an impartial BOFPC within 30 days of any written charges filed against her and an opportunity to be heard.

**ANSWER:    Defendants deny the allegations contained in Paragraph 108 of Plaintiff's Complaint.**

109.    "Cause" in Illinois has been defined as "some substantial shortcoming which renders [the employee's] continuance in her office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for her no longer occupying the place."

**ANSWER:    Defendants admit the duties imposed by law and deny any allegations inconsistent therewith contained in Paragraph 109 of Plaintiff's Complaint.**

110.    Defendant Beck-Fulgham never filed a statement of charges seeking Wilson's termination as a police officer to establish the requisite "cause" as required by statute.

**ANSWER:    Defendants deny Beck-Fulgham was required to file a statement of charges and thus deny the allegations contained in Paragraph 110 of Plaintiff's Complaint.**

111.    On belief, Beck-Fulgham, not the BOFPC, denied Wilson's right to a hearing.

**ANSWER:    Defendants deny Wilson had a right to a hearing, and thus deny the allegations contained in Paragraph 111 of Plaintiff's Complaint.**

112.    Defendant Beck-Fulgham lacks authority to unilaterally terminate Wilson without "just cause" and without providing her the requisite process as described above.

**ANSWER:    Defendants deny the allegations contained in Paragraph 112 of Plaintiff's Complaint.**

113.    No hearing ever occurred before the BOFPC in any official proceeding or final order rendering Wilson's termination as a police officer ineffective and in violation of federal law, state law, and Village ordinance, and therefore should be rescinded.

**ANSWER:    Defendants deny any hearing was required in relation to Wilson's termination and thus deny the allegations contained in Paragraph 113 of Plaintiff's Complaint.**

### COUNT V – WRIT OF MANDAMUS – (State Law Claim)
### Wilson v. Village of University Park, Illinois

114.    Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

**ANSWER:    Defendants incorporate by reference their answers to said paragraphs.**

115.    Mandamus is an extraordinary civil remedy that will be granted to enforce, as a matter of right, the performance of official nondiscretionary duties by a public officer. *Lee v. Findley*, 359 Ill.App.3d 1130, 1133, 296 Ill.Dec. 632, 835 N.E.2d 985 (2005).

**ANSWER:** **Defendants admit the duties imposed by law and deny any allegations inconsistent therewith contained in Paragraph 115 of Plaintiff's Complaint.**

116.    Pursuant to both Illinois law and Village ordinance, Beck-Fulgham had authority and a clear duty to properly remove Wilson as police chief by filing a statement of charges before the Board of Trustees, allowing Wilson an opportunity to be heard, and after garnering a majority vote by the Board of Trustees.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 116 of Plaintiff's Complaint.**

117.    If the majority of the Board voted to remove Wilson as police chief, it would then refer the matter to the BOFPC to determine if any further sanction of 30 days or termination was warranted.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 116 of Plaintiff's Complaint.**

118.    Wilson seeks a writ of mandamus to compel the Village to restore her to the position of police chief because she was not correctly removed from that position.

**ANSWER:** **Defendants admit Wilson purportedly seeks a writ of mandamus. Defendants deny the remaining allegations contained in Paragraph 118 of Plaintiff's Complaint.**

119.    Alternatively, Wilson also seeks a writ of mandamus to compel the Village to restore her to the rank of sergeant should this Court find that she was removed correctly as police chief.

**ANSWER:** **Defendants admit Wilson purportedly seeks a writ of mandamus. Defendants deny the remaining allegations contained in Paragraph 119 of Plaintiff's Complaint.**

120.    Defendant Village has failed to fulfill such duties by refusing Wilson's requests to provide her a hearing before the Trustees for removal as a police chief and also to provide her

with a fair and impartial hearing before the BOFPC regarding her termination as a police officer. *Baldacchino v. Thompson*, 289 Ill.App.3d 104, 109, 224 Ill.Dec. 621, 682 N.E.2d 182 (1997).

**ANSWER:** **Defendants deny the allegations contained in Paragraph 120 of Plaintiff's Complaint.**

121.    Defendant Village is without legal authority and acting contrary to Illinois law by both removing her as police chief and by terminating her as a police officer without any due process rights.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 121 of Plaintiff's Complaint.**

122.    Defendant Village refused Wilson's requests for a hearing to adjudicate the appeal of (1) her removal as police chief and (2) her termination as a police officer.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 122 of Plaintiff's Complaint.**

123.    Defendant Village is also without legal authority and acting contrary to Illinois law by withholding payment of salary and benefits earned by Wilson without notice, charges, or a hearing being held before the Board of Trustees and the BOFPC.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 123 of Plaintiff's Complaint.**

124.    Under §5/14·101 of the Code of Civil Procedure, this Court is vested with the power to grant Plaintiff a Writ of Mandamus enforcing these nondiscretionary Acts on the part of the Board of Trustees and BOFPC and grant such other relief to enforce those rights.

**ANSWER:** **Defendants admit the duties imposed by law and deny any allegations inconsistent therewith contained in Paragraph 124 of Plaintiff's Complaint.**

125.    Wilson has no other adequate remedy at law other than to compel both the Board

of Trustees and the BOFPC to comply with the applicable provisions of the Municipal Code by invoking the equitable jurisdiction of this Court.

**ANSWER: Defendants deny the allegations contained in Paragraph 125 of Plaintiff's Complaint.**

126. The denial of a hearing before the Board of Trustees is properly remedied through mandamus because Wilson has established that (1) she has an explicit right to notice of a statement of charges that are brought before the Board of Trustees, (2) this is a clear duty on the part of both Defendant Beck-Fulgham and the Board of Trustees to conduct a vote and opportunity for Wilson to rebut the charges, and (3) clear authority exists in the both Beck-Fulgham and the Board of Trustees to comply with an order granting mandamus relief.

**ANSWER: Defendants deny the allegations contained in Paragraph 126 of Plaintiff's Complaint.**

127. The denial of a hearing before the BOFPC is properly remedied through mandamus because Wilson established that (1) she has a clear right to a hearing before the BOFPC, (2) this is a clear duty on the part of the BOFPC to conduct the hearing, and (3) clear authority exists in the BOFPC to comply with an order granting mandamus relief.

**ANSWER: Defendants deny the allegations contained in Paragraph 127 of Plaintiff's Complaint.**

**COUNT VI—42 U.S.C. § 1983 CLAIM FOR DEPRIVATION OF 1ST AMENDMENT**
**RIGHTS & FOR WRONGFUL TERMINATION OF EMPLOYMENT**
**Wilson v. All Defendants**

128. Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

**ANSWER: Defendants incorp the allegations contained in Paragraph 127 of Plaintiff's Complaint.**

129. The First Amendment to the United States Constitution guarantees Plaintiff's right

to speak on matters of public concern free from retaliation.

**ANSWER: Defendants admit the duties imposed by law and deny any allegations inconsistent therewith contained in Paragraph 129 of Plaintiff's Complaint.**

130.    As described more fully above and incorporated by reference herein, Plaintiff engaged in extensive protected speech on matters of public concern, including, but not limited to, publicly opposing the sexual harassment of Ms. Kitching, filing EEOC charges, and contacting the Will County State's Attorney's Office and F.B.I. that implicated both Defendant Beck-Fulgham's and Roudez' III unlawful conduct and mismanagement of taxpayer dollars.

**ANSWER: Defendants deny the allegations contained in Paragraph 130 of Plaintiff's Complaint.**

131.    As a result of Plaintiff's protected activities, Defendants retaliated against her in the manner described in the preceding paragraphs.

**ANSWER: Defendants deny the allegations contained in Paragraph 131 of Plaintiff's Complaint.**

132.    Defendants intended by each of the actions described in the preceding paragraphs to punish, retaliate, and deter Wilson's exercise of her First Amendment Rights.

**ANSWER: Defendants deny the allegations contained in Paragraph 132 of Plaintiff's Complaint.**

133.    Wilson has suffered harm due to the Defendants' actions and has been deprived of her rights secured under the First Amendment to the United States Constitution under §1983.

**ANSWER: Defendants deny the allegations contained in Paragraph 133 of Plaintiff's Complaint.**

134.    Wilson had no job purpose for her speech, no self-interest for her speech and associational activity, and her speech occurred through acts outside the line of duty.

**ANSWER: Defendants deny the allegations contained in Paragraph 134 of**

Plaintiff's Complaint.

135.    Wilson's interest in acting as a citizen and in testifying on the actions of the administrators support her claim to the constitutional protection of her First Amendment freedom of speech.

**ANSWER:    Defendants deny the allegations contained in Paragraph 135 of Plaintiff's Complaint.**

136.    Wilson's protected activity was a substantial or motivating factor in the actions taken against her, both by the Village and by individual Defendants.

**ANSWER:    Defendants deny the allegations contained in Paragraph 136 of Plaintiff's Complaint.**

137.    Beck-Fulgham, as the Manager of the Village of University Park, is a final policymaker for the Village because she oversees all operations of the Village and has authority over significant matters involving the exercise of discretion.

**ANSWER:    Defendants deny the allegations contained in Paragraph 137 of Plaintiff's Complaint.**

138.    Such retaliation constitutes a municipal policy and widespread practice of the Village to retaliate against employees who complain of misconduct regardless of the truth of such claims.

**ANSWER:    Defendants deny the allegations contained in Paragraph 138 of Plaintiff's Complaint.**

139.    These deprivations of federal rights caused Wilson to suffer, and she will likely continue to suffer grievous harm including substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and continued emotional distress.

**ANSWER:    Defendants deny the allegations contained in Paragraph 139 of Plaintiff's Complaint.**

**COUNT VII – 42 U.S.C. § 1983 DEPRIVATION BASED ON RETALIATION**
**Wilson v. All Individual Defendants**

140.    Plaintiff realleges each paragraph of this Complaint as if fully restated here.

**ANSWER:    Defendants reallege their answers to said Paragraphs.**

141.    The 14th Amendment to the United States Constitution guarantees the Plaintiff the right to be free from retaliation for protected activity.

**ANSWER:    Defendants admit the duties imposed by law and deny any allegations inconsistent therewith contained in Paragraph 141 of Plaintiff's Complaint.**

142.    Because of Wilson's exercise of protected activity, individual Defendants retaliated against Wilson by subjecting her to conduct described throughout the complaint, including improperly stripping her police duties, unlawfully removing her as police chief, terminating her without just cause, targeting her son for purported illegal activity, and spreading false rumors that Wilson had an extramarital affair, each alone, would be enough to deter a reasonable employee from engaging in protected activity or opposing unlawful activity.

**ANSWER:    Defendants deny the allegations contained in Paragraph 142 of Plaintiff's Complaint.**

143.    Both Beck-Fulgham and Roudez III acted under color of law, through their state-based actions, and directly or personally spearheaded or specially attended to Wilson in the ways alleged throughout this Complaint. The misconduct described above was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER:    Defendants deny the allegations contained in Paragraph 143 of Plaintiff's Complaint.**

144.    For example, despite Beck-Fulgham's initial auspices of an internal investigation into Wilson's purported misconduct, a closer examination of her conduct reveals the retaliatory underbelly that tainted the entire investigation by:

    a.    Improperly usurping both the Board of Trustees and the BOFPC's authorities by

terminating Wilson using the April 1, 2022 "retire or be fired" letter;

b.  Disregarding Village Ordinance and state law that require Beck-Fulgham to file a statement of reasons justifying Wilson's removal as police chief, and then correctly putting the matter to a majority vote before the Board of Trustees;

c.  Using the Peace Officer Disciplinary Act to compel Wilson's testimony during her interrogation, using the compelled testimony as grounds for termination without ever filing charges against Wilson with the Villages' Board of Fire and Police Commission within 30 days as required by law; and

d.  Not referring the matter to a fair and impartial hearing before the BOFPC or establishing a just cause basis for termination.

**ANSWER: Defendants deny the allegations contained in Paragraph 144 of Plaintiff's Complaint.**

145.   The retaliation against Wilson was part of the Village's custom, policy, and practice and its policymakers to punish such employees that investigated or complained of misconduct by other officers in violation of 42 U.S.C. § 1983.

**ANSWER: Defendants deny the allegations contained in Paragraph 145 of Plaintiff's Complaint.**

146.   As a result, Plaintiff has suffered monumental injuries, *to wit*, subjection to a sham investigation, never having the opportunity be heard before any Board, improper removal as police chief, and improper termination from her job as a police officer and corresponding loss of pay, benefits, reputational damage, humiliation, and a garden variety of emotional distress.

**ANSWER: Defendants deny the allegations contained in Paragraph 146 of Plaintiff's Complaint.**

<u>COUNT VIII—MONELL CLAIM</u>
**Wilson v. Village of University Park, Illinois**

147.    Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

**ANSWER:   Defendants  incorporate  by  reference  their  answers  to  said Paragraphs.**

148.    Defendant Beck-Fulgham was the Manager of the Village and was a final policymaker.

**ANSWER:   Defendants deny the allegations contained in Paragraph 148 of Plaintiff's Complaint.**

149.    Defendant Village trivializes, ignores, and imposes arbitrary and capricious penalties upon employees for alleged misconduct without any regard for consistency in recommending or imposing discipline, without regard for federal law, state law, or its ordinances.

**ANSWER:   Defendants deny the allegations contained in Paragraph 149 of Plaintiff's Complaint.**

150.    As a matter of widespread practice so prevalent as to be a municipal policy, those who have dared to oppose the Administration experienced retaliation like that alleged by Plaintiff.

**ANSWER:   Defendants deny the allegations contained in Paragraph 150 of Plaintiff's Complaint.**

151.    The Village has a history of blacklisting and retaliating against employees who question leadership, report misconduct, or go against the Administration.

**ANSWER:   Defendants deny the allegations contained in Paragraph 151 of Plaintiff's Complaint.**

152.    The prior police chief, Ed Bradley, filed suit alleging unlawful termination. *Bradley v. Village of University Park*.

**ANSWER:    Defendants admit the allegations contained in Paragraph 152 of Plaintiff's Complaint.**

153.    Wilson previously sued University Park for due process violations because its BOFPC ignored state law before and after her disciplinary proceedings and gave her no process at all. *Wilson v. University Park Bd. of Fire & Police Comm'rs*, No. 15 C 7425, 2016 WL 147916 (N.D. Ill. January 13, 2016).

**ANSWER:    Defendants admit Wilson previously sued the Village. Defendants deny the remaining allegations contained in Paragraph 153 of Plaintiff's Complaint.**

154.    Defendant Beck-Fulgham, as a final policymaker for the Village, retaliated against Wilson for exercising her rights under Title VII and IDHR as described above.

**ANSWER:    Defendants deny the allegations contained in Paragraph 154 of Plaintiff's Complaint.**

155.    Defendant Roudez III, as a final policymaker for the Village, retaliated against Wilson for exercising her rights under Title VII and IDHR as described above.

**ANSWER:    Defendants deny the allegations contained in Paragraph 155 of Plaintiff's Complaint.**

156.    The Village set upon a concerted course of unlawful conduct, forcing Wilson out of her position as police chief and as a police officer by relying on ginned-up, trumped-up, bases that were pretextual litigation figments to justify removing her as police chief.

**ANSWER:    Defendants deny the allegations contained in Paragraph 156 of Plaintiff's Complaint.**

157.    On belief, additional examples of misconduct will be uncovered after a reasonable opportunity to conduct discovery related to the Village's disciplinary practices and policies and its disproportionate enforcement of said practices and procedures.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 157 of Plaintiff's Complaint.**

158.    Because the Village employed the foregoing express acts espoused by the Village through both Beck-Fulgham and Roudez III to retaliate against Wilson, she suffered harm including, without limitation, loss of career and reputation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and emotional distress.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 158 of Plaintiff's Complaint.**

**COUNT IX – VIOLATION OF THE WHISTLEBLOWER ACT (740 ILCS §174/1)**
**Wilson v. All Defendants**

159.    Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

**ANSWER:** **Defendants incorporate by reference their answers to said Paragraphs.**

160.    Wilson engaged in protected activity as alleged throughout the Complaint including opposing Defendant's unlawful conduct to the Will County State's Attorney's Office, F.B.I., the EEOC, and the Illinois Department of Human Rights. See 740 ILCS 174/15(b).

**ANSWER:** **Defendants admit that Plaintiff filed an EEOC Charge and purports to have complained to the FBI and State's Attorney's Office. Defendants deny the remaining allegations contained in Paragraph 160 of Plaintiff's Complaint.**

161.    After Wilson spoke out as alleged in the preceding paragraphs, Defendants retaliated against her by stripping her of her responsibilities and access, removing her as police chief, terminating her as a police officer without just cause, targeting her son with made-up charges, and spreading false and malicious lies about her. Each of these actions constitutes a materially adverse employment action that altered the terms and conditions of her employment.

**ANSWER: Defendants deny the allegations contained in Paragraph 161 of Plaintiff's Complaint.**

162. When Defendants subjected Plaintiff to the various materially adverse employment actions, they were aware of her complaints. *See Spalding v. Village*, 186 F. Supp. 3d 884, 918 (N.D. Ill. 2016) (denying the motion for summary judgment where a reasonable jury could infer that Plaintiff was retaliated against for blowing the whistle on police corruption even when the defendants denied knowing that Plaintiffs were whistle-blowers).

**ANSWER: Defendants deny the allegations contained in Paragraph 162 of Plaintiff's Complaint.**

163. Defendants were prohibited from retaliating against Plaintiff for engaging in the aforementioned protected activity, including reporting clear public policy mandates.

**ANSWER: Defendants deny they retaliated against Plaintiff and thus deny the allegations contained in Paragraph 163 of Plaintiff's Complaint.**

<u>**COUNT X – REPLEVIN (State Law Claim)**</u>
**Wilson v. Defendant Village, unknown Village**
**employees**

164. Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

**ANSWER: Defendants incorporate by reference their answers to said Paragraphs.**

165. Beck-Fulgham barred Wilson from entering the police department during her leave, preventing Wilson from retrieving the property in her office for more than four months.

**ANSWER: Defendants admit Plaintiff was barred from performing her duties while on paid administrative leave. Defendants deny the remaining allegations contained in Paragraph 165 of Plaintiff's Complaint.**

166. During Wilson's administrative leave, Defendant barred Wilson from entering her office, even though various unknown individuals had unfettered access to rifle through her

office.

**ANSWER:** **Defendants admit Plaintiff was barred from performing her duties while on paid administrative leave. Defendants deny the remaining allegations contained in Paragraph 166 of Plaintiff's Complaint.**

167.    When Wilson finally received her personal property from her office following her termination, she discovered that several items were missing, including:

   a.  Two Glock guns and two Glock magazines (.45 caliber Glock and .40 caliber Glock);

   b.  Personalized rifle dust cover;

   c.  Awards and certificates, paperwork, daily planner, binders, USB drives, and law books;

   d.  Leather police jacket, police raincoat, shooting glasses, shooting electronic earmuffs; and

   e.  Cash.

**ANSWER: Defendants deny the allegations contained in Paragraph 167 of Plaintiff's Complaint.**

168.    Various unknown Village employees have wrongfully detained Wilson's property.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 168 of Plaintiff's Complaint.**

169.    Wilson's property has not been taken for taxes, assessments, or fines levied by any state or federal law, nor seized under any execution or attachment against her chattels, nor held by any writ of replevin against Wilson.

**ANSWER:** **Defendants deny Plaintiff's property was taken in the first instance, and thus deny the remaining allegations contained in Paragraph 169 of Plaintiff's Complaint.**

170.    Wilson never authorized anyone to borrow, hold, or have said property.

**ANSWER:** **Defendants lack sufficient knowledge or information as to whether Wilson ever "authorized anyone to borrow, hold, or have said property."**

171.    The property's value is more than $5,000 and has sentimental attachment.

**ANSWER:    Defendants lack sufficient knowledge or information as to the value of Plaintiff's property.**

## COUNT XI—VIOLATION OF ILLINOIS WAGE PAYMENT & COLLECTION ACT
### Wilson v. Defendant Village

172.    Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

**ANSWER:    Defendants incorporate by reference their answers to said Paragraphs.**

173.    According to Village Ordinance, Wilson is entitled to severance pay equal to four (4) months of her regular salary, which constitutes a binding and enforceable contract supported by valuable consideration defined under the Illinois Wage Payment and Collection Act.

**ANSWER:    Defendants deny Plaintiff is entitled to severance pay and deny the remainder of the allegations contained in Paragraph 173 of Plaintiff's Complaint.**

174.    Wilson performed all conditions precedent and other obligations required under the Agreement. She was not convicted of any felony or crime involving moral turpitude, and she was not fired for any "just cause" reason before a proper adjudicating body.

**ANSWER:    Defendants deny the allegations contained in Paragraph 174 of Plaintiff's Complaint**

175.    As such, no legally appropriate termination occurred, and Wilson's right to her salary and benefits has never abated, including Wilson's remaining 144 hours of floating holiday time, accrued sick time, personal days, and 200 hours of banked vacation time.

**ANSWER:    Defendants deny the allegations contained in Paragraph 175 of Plaintiff's Complaint**

176.    On or about May 2022, Wilson timely demanded payment on such benefits.

**ANSWER:** Defendants deny the allegations contained in Paragraph 176 of Plaintiff's Complaint.

177.    As of the filing date, Defendant Village has not paid Wilson's earned severance or any of her accrued compensatory time in violation of the Act.

**ANSWER:** Defendants deny it has any obligation to pay Wilson severance pay or that Wilson continued to accrue vacation time post-termination. Defendants thus deny the allegations contained in Paragraph 177 of Plaintiff's Complaint

### COUNT XII – INDEMNIFICATION
### Wilson v. Defendant Village

178.    Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

**ANSWER:** Defendants incorporate by reference their answers to said Paragraphs.

179.    Defendant Village is obligated to assume financial responsibility for the actions committed by its officials or employees.

**ANSWER:** Defendants deny the allegations contained in Paragraph 179 of Plaintiff's Complaint.

### AFFIRMATIVE DEFENSES

### Affirmative Defense No. 1
(Failure to Mitigate Damages)

1.    Plaintiff cannot recover against any Defendant to the extent she failed to make reasonable efforts to mitigate her alleged damages.

Respectfully submitted,

**OTTOSEN DINOLFO HASENBALG & CASTALDO, LTD.**

*/s/ Stephen H. DiNolfo*
One of Its Attorneys

Stephen H. DiNolfo (ARDC # 6206823)
John E. Motylinski (ARDC # 6321177)
OTTOSEN DINOLFO HASENBALG & CASTALDO, LTD.
1804 N. Naper Blvd; Suite 350
Naperville, Illinois 60563
630-682-0085
sdinolfo@ottosenlaw.com