IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBORAH WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-cv-06020 |
| ) | |
| ERNESTINE B. BECK-FULGHAM, both ) | Honorable Judge Lindsay Jenkins |
| ind. and in her official capacities as Village ) | |
| Manager, JOSEPH ROUDEZ III, both ) | Magistrate Judge Maria Valdez |
| Ind. and his official capacities as Mayor, and ) | |
| UNIVERSITY PARK, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' LOCAL RULE 56.1(b)(3) RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS IN SUPPORT OF HER MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants, Ernestine B. Beck-Fulgham, Joseph Roudez and the Village of University Park, by and through their attorneys, Odelson, Murphey, Frazier & McGrath, LTD., state as follows for their Local Rule 56.1(b)(3) response to Plaintiff's Statement of Material Facts in Support of her Partial Motion for Summary Judgment:

**Defendants' Standing Objection**

There are no Exhibits C, D, E, F, G or H in support of Plaintiff's Statement of Facts filed in the record. Defendants therefore object to each fact contained herein that cites to said exhibits for failure to comply with Local Rule 56.1(a).

**Responses**

**Jurisdiction and Venue:**

1. The Defendants admit this Court has jurisdiction of the matter, both federal and state law claims, and that venue is proper in the Northern District of Illinois. (Exhibit A - Answer at ¶¶2-4)

**RESPONSE:** Defendants admit.

2. The Defendants admit that the Village of University Park (hereafter "Village" or "municipal defendant") is a home rule unit and an Illinois Municipal Corporation. (Ex. A at ¶9.)

**RESPONSE:** **Defendants admit.**

3. Ernestine Beck-Fulgham was the Village Manager from September 2019 until April 2023. (Exhibit E. Beck-Fulgham Dep. pp. 15:18-22, 13:1-4).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit E in the record. Subject to and without waiving said objection, Defendants admit.**

4. Karen Lewis has been a Village trustee since 2021, and was a trustee when Wilson was terminated. (Exhibit H Lewis Dep. p. 8:7-14)

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit H in the record. Subject to and without waiving said objection, Defendants admit.**

5. Theaplise Brooks has been a Village trustee since 2017, and was a trustee when Wilson was terminated. (Exhibit G - Brooks Dep. p. 7:13-20)

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit G in the record. Subject to and without waiving said objection, Defendants admit.**

6. Brooks served on the University Park Fire & Police Commission for at least two terms. (Exhibit G - Brooks Dep. p. 7:23-24, 8:1-7, 9:4-10).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit G in the record. Subject to and without waiving said objection, Defendants admit.**

**Appointment and Removal of a Police Chief:**

7. The Village Manager initiates appointing and removing a police chief with the concurrence of the board of trustees. (Exhibit E. Beck-Fulgham Dep. p. 77:7-13; Exhibit F. Bolding Dep. p. 28:4-24).

**RESPONSE:** Defendants object to the assertions contained in this Paragraph as there are no Exhibits E or F in the record.

Defendants further object to the assertions contained in this Paragraph as the materials cited are inadmissible opinions and violate the best evidence rule. The best evidence of the Village Manager's authority is contained in Village Ordinance. Beck-Fulgham and Bolding's beliefs and lay opinions as to a question of law on the Village Manager's authority are not relevant or material to the issues presented for summary judgment.

Subject to and without waiving said objections, Defendants dispute the assertions contained in Paragraph 7 to the extent they do not adequately reflect the Village of University Park Municipal Code Section 220-05 which states, in relevant parts, "The Manager shall appoint with the approval of the Village Board the Police Chief." and "The Manager may remove or discharge [the police chief], but only after having reported the reasons for that action to the Village Board and having the Village Board confirm the Manager's decision." (Ex. 1: Section 220-05 of University Park Code of Ordinances).

8. While the village manager initiates the removal process, it requires the concurrence of the board. (Exhibit D. Wilson Dep. 357:6-21).

**Response:** Defendants object to the assertions contained in this Paragraph as there is no Exhibit D in the record.

Defendants further object to the assertions contained in this Paragraph as the material cited is inadmissible on the grounds that there is no foundation presented for Deborah Wilson's knowledge of the removal process and her lay opinion as to a question of law on the legal requirements for removal are not relevant or material to the issues presented for summary judgment.

Subject to and without waiving said objections, Defendants dispute the assertions contained in Paragraph 8 to the extent they do not adequately reflect the Village of University Park Municipal Code Section 220-05 which states, in relevant part, "The Manager may remove or discharge [the police chief], but only after having reported the reasons for that action to the Village Board and having the Village Board confirm the Manager's decision." (Ex. 1).

9. All votes and decisions related to the removal voted (sic) on in open session. Records of

these votes and executive session discussions are maintained and stored at the village hall, managed by the clerk (Exhibit F. Bolding Dep. pp. 26:18-24, 27, 28:1-2)

**Response:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit F in the record.**

**Subject to and without waiving said objection, Defendants deny the first sentence of Paragraph 9 as the cited material does not support this assertion. Bolding testified that the Board discussed the appointment of Chief Wilson in executive session then voted in open session to appoint her. (Ex. 2: Bolding Dep Tx. 25: 9-16; 26: 18-23). The cited material is silent as to removal. Defendants admit that the Village Clerk maintains the open meeting minutes and the recordings of executive sessions at the Village Hall. (Id. 27: 3-13).**

10. Both the village manager and the mayor attend the executive sessions related to removal discussions. The mayor participates in the voting process consistently, whereas the village manager does not vote ever (Exhibit F. Bolding Dep. p. 29:4-18).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit F in the record.**

**Subject to and without waiving said objection, Defendants admit the Village Manager and Mayor generally attend executive sessions. Defendants dispute the phrase "related to removal discussions" as the cited material does not support that assertion. Defendants admit the second sentence of Paragraph 10.**

11. After the discussion in the executive session, the board returns to an open session where a formal vote is taken to conclude the removal process. This vote is recorded, and the results are documented as official records, which are stored and managed by the clerk (Exhibit F. Bolding Dep. p. 29:1-3, p. 29:18-24).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit F in the record.**

**Defendants further object to the assertions contained in this Paragraph as the material cited is inadmissible speculation and lacks foundation. There is no foundation for former Trustee Bolding's knowledge as to the removal procedure for a police chief.**

4

> **Subject to and without waiving said objections, Defendants deny the statements contained in this Paragraph as the cited material does not support these assertions.**

**Hiring and Firing of a Police Officer:**

12. The Village's Board of Fire and Police Commissioners ("BOFPC") is a statutorily created administrative agency created, which is vested with the authority to hire, promote, discipline, and discharge University Park police officers under §5/10-2.1-1. (Exhibit A, ¶64).

**RESPONSE:** **Defendants admit.**

13. The police chief can only suspend an officer for five days or less without providing written notice to the BOFPC. (5/10-2.1-17). (Exhibit A, ¶65).

**RESPONSE:** **Defendants deny the cited material supports the assertions contained in this Paragraph.**

14. Upon such written charges filed by the police chief, the BOFPC maintains the authority to discharge or suspend an officer for up to 30 days. (Exhibit A, ¶66).

**RESPONSE:** **Defendants deny the cited material supports the assertions contained in this Paragraph.**

15. Currently, disciplinary matters involving police officers and sergeants are handled by the Board of Fire and Police Commission if they choose to go to the commission instead of an arbitrator, a provision included in their contract to avoid potential bias from the commissioner. The police chief recommends disciplinary actions to the Board. After a hearing, the Board decides whether to dismiss charges, uphold the police chief's recommendation, or make its own decision. The courts can then review this decision to ensure proper handling by the Police and Fire Commission. (Exhibit G - Brooks Dep., pp. 12:11-24, 13:1-10).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit G in the record.**

> **Subject to and without waiving said objections, Defendants admit.**

>**Defendants deny these assertions are material to the issues presented in Plaintiff's motion for partial summary judgment.**

**Wilson's Employment**

16. Wilson was the appointed police chief from April 2020 until her unlawful termination on April 5, 2022. (Exhibit A, ¶18; Exhibit D. Wilson Dep. pp. 10:21-24, 11:1-9).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit D in the record.**

**Subject to and without waiving said objection, Defendants admit that Wilson was appointed Chief of Police at the April 30, 2020 Village Board Meeting, which was retroactive to March 24, 2020. (Dkt. # 059 Defs SOF ¶ 1) Defendants admit Wilson was terminated on April 5, 2022. Defendants dispute that Wilson's termination was unlawful.**

17. Wilson was presented with a contract to be police chief but never signed it because she believed that she would be taking away certain benefits that she had as a police officer. (Exhibit D. Wilson Dep. pp. 306:13-24, 307:1-13).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit D in the record.**

**Subject to and without waiving said objection, Defendants admit Wilson was presented with a contract to be police chief but never signed it. Defendants deny Wilson believed that the contract would be taking away certain benefits she had as a police officer as the cited material does not support this assertion.**

18. No one at the Village ever brought up the police contract again. (Exhibit D. Wilson Dep. p. 307:14-22).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit D in the record.**

**Subject to and without waiving said objection, Defendants deny the statement contained in this Paragraph as the cited material does not support this assertion.**

19. Wilson began working as a police officer for the Village of University Park in 1999. (Exhibit D. Wilson Dep. p. 13:8-12).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit D in the record.**

**Subject to and without waiving said objection, Defendants admit.**

20. Wilson's salary was $125,000 annually (Exhibit A, ¶19, Exhibit D. Wilson Dep. p. 313:22- 24).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit D in the record.**

**Subject to and without waiving said objection, Defendants admit that at the time of her termination, Wilson's annual salary was $125,000. Defendants deny this assertion is material to the issues presented in Plaintiff's motion for partial summary judgment.**

21. Beck-Fulgham gave Wilson a performance review and testified that it was "not bad." (Exhibit E. Beck-Fulgham Dep. pp. 152: 2-24, 153: 6-24).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit D in the record.**

**Subject to and without waiving said objection, Defendants admit. Defendants deny this assertion is material to the issues presented in Plaintiff's motion for partial summary judgment. Answering further, the performance review occurred prior to the incidents resulting in Wilson's termination. (Ex. 3: Beck-Fulgham Dep. Tx. 153: 23 – 154: 1)**

22. On December 16, 2021 Wilson alleged that she was attacked by two golf course employees. (Exhibit D. Wilson Dep. pp. 187-189).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit D in the record.**

**Subject to and without waiving said objection, Defendants deny the statement in this Paragraph as the cited material does not support this assertion. Defendants deny this assertion is material to the issues**

**presented in Plaintiff's motion for partial summary judgment.**

23. Wilson was placed on administrative leave hours after the golf course incident on December 16, 2021. (Exhibit A, ¶¶48-49).

**RESPONSE:** **Defendants admit.**

24. Beck-Fulgham made the decision unilaterally to put Wilson on administrative leave. (Exhibit E. Beck-Fulgham Dep. p. 134:2-7, Exhibit H Lewis Dep. p. 40:18-24, 43:15-18).

RESPONSE: **Defendants object to the assertions contained in this Paragraph as there are no Exhibits E or H in the record.**

**Subject to and without waiving said objection, Defendants admit.**

25. On April 1, 2022, Wilson received a letter from Village Manager, Beck-Fulgham, stating that she was either to resign by April 5, 2022, or she would be terminated. (Exhibit A, ¶52, Exhibit D. Wilson Dep. pp. 219-221, Ex. B).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit D in the record.**

**Subject to and without waiving said objection, Defendants admit Wilson received a letter on April 1, 2022 from the Village Manager. Defendants dispute that the letter stated Wilson was to resign or she would be terminated. The letter states Wilson was to retire or be terminated. (PSOF Ex. B)**

26. Beck-Fulgham unilaterally decided to give Wilson the ultimatum to retire or be fired. (Exhibit E- Beck Fulgham Dep. P. 141: 11-24, 142: 1-9)

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit E in the record.**

**Subject to and without waiving said objection, Defendants dispute the assertions contained in Paragraph 26. The cited material establishes that Beck-Fulgham came up with the option for Wilson to voluntarily retire or resign or be terminated. (Ex. 3: Beck-Fulgham Dep Tx. 141: 3-10) Beck-Fulgham discussed this option with the Village Board at an executive session on March 22, 2022 and the**

8

>> **Board agreed with the option provided by Beck-Fulgham. (Dkt # 059 ¶ 44)**

27. Beck-Fulgham did not seek the Board of Trustees' approval before sending the April 1, 2022, letter. (Exhibit E - Beck Fulgham Dep. p. 254:15-20).

RESPONSE: **Defendants object to the facts contained in this Paragraph as there is no Exhibit E in the record.**

**Subject to and without waiving said objection, Defendants deny the statement contained in this Paragraph as the cited material does not support this assertion.**

28. Trustee Lewis never saw the April 1, 2022 letter from Beck-Fulgham. (Exhibit H Lewis Dep. p. 148:15-18).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit H in the record.**

**Subject to and without waving said objection, Defendants admit.**

29. On April 5, 2022, Wilson's attorney, Scatchell, wrote to the Defendants invoking Wilson's due process rights and noting that the Defendants' interpretation of the law was flawed. (Exhibit A, ¶53, A copy of the letter is attached hereto as Exhibit C).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit C in the record.**

**Defendants further object to the assertions contained in this Paragraph as the cited material is inadmissible hearsay.**

**Subject to and without waiving said objections, Defendants admit the letter was sent, but dispute that Wilson had due process rights or that their interpretation of the law was flawed.**

30. Wilson did not receive a hearing nor was she allowed to address the Village Board. (Exhibit E. Beck-Fulgham Dep. p. 255:9-12, 16-19)

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit E in the record.**

**Subject to and without waiving said objection, Defendants admit the**

9

>**Wilson did not receive a hearing. Defendants dispute that Wilson was not allowed to address the Village Board. The material cited establishes only that the Village Manager did not allow Wilson to be heard by the Board of Trustees.**

31. Wilson went to the FBI and the State's Attorney's Office in late October or November 2021 regarding what she perceived to be illegalities with the Village administration. (Exhibit D. Wilson Dep. pp. 257: 8-10, 258:20-24, 259:1-3).

**RESPONSE**: **Defendants object to the assertions contained in this Paragraph as there is no Exhibit D in the record.**

>**Subject to and without waiving said objection, Defendants admit Wilson testified she went to the Will County State's Attorney's Office in late October or early November of 2021.**

>**Defendants dispute the remainder of the facts contained in Paragraph 31. Wilson testified she went to the FBI one time in early December of 2021. (Dkt. 059 ¶ 31) Defendants specifically deny that Wilson went to these law enforcement agencies regarding "perceived illegalities with the Village administration." Rather, Wilson went to law enforcement because she believed something unlawful was happening with the golf course, but did not know what law was violated. (Id.)**

>**Defendants further deny the assertions contained in Paragraph 31 are material to the issues presented in Plaintiff's motion for partial summary judgment.**

32. Brooks knew that Wilson had gone to the FBI and told Beck-Fulgham that Wilson had contacted the FBI (Exhibit G - Brooks Dep., pp. 86:20-24, 87:7-24, 88:1-19).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit G in the record.**

>**Subject to and without waiving said objections, Defendants admit Trustee Brooks testified that he knew Wilson had gone to the FBI. Defendants dispute that Trustee Brooks told Beck-Fulgham that Wilson had contacted the FBI. Trustee Brooks testified the fact that Wilson had gone to the FBI was confidential and Wilson made sure she did not tell anyone else. (Ex. 4: Brooks Dep. Tx. 87: 12- 17). Trustee Brooks was asked repeatedly about telling Beck-Fulgham about Wilson speaking to the FBI and his answers were consistently**

10

> vague or unresponsive. (Id. 88: 1 - 91:11)
>
> **Trustee Brooks also testified that the meetings with the FBI and state's attorney were confidential and he did not tell anyone outside of himself and Wilson that Wilson was speaking to the FBI or state's attorney. (Ex. 5: Brooks 2nd Dep. Tx. 51: 23- 52: 5). Brooks told the Board that Wilson had communicated with the FBI and state's attorney at the closed session meeting involving her termination. (Id. 52: 8-24; 53: 1). This meeting occurred on March 22, 2022. (Dkt. 059 ¶ 44).**
>
> **Defendants further deny the assertions contained in Paragraph 32 are material to the issues presented in Plaintiff's motion for partial summary judgment.**

33. Some of the residents mentioned to the Board at one of the meetings that Wilson went to the State's Attorney's Office and the FBI after she was place (sic) (Exhibit D. Wilson Dep. p. 270:19-24, 271:1-4).

> **RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit D in the record.**
>
> **Defendants further object to the assertions contained in this Paragraph as the material cited is inadmissible as hearsay and lacking foundation. Wilson testified that she believed some residents told the Board that she had been speaking to the FBI and State's Attorney's Office and that there should be a recording. (Dkt. 059-1: Wilson Dep. Tx. 270: 19-24, 271: 1-4). Wilson did not testify as to having any personal knowledge of these statements, when the statements occurred, who made the statements, who was present or any of the other foundational requirements. Additionally, these statements of unknown residents are hearsay.**
>
> **Defendants further deny the assertions contained in Paragraph 33 are material to the issues presented in Plaintiff's motion for partial summary judgment.**

34. Wilson spoke about going to the FBI and the State's Attorney's Office in her Interrogation. (Exhibit D. Wilson Dep. p. 272:22-24, 273:1-6).

> **RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit D in the record.**

11

>**Subject to and without waiving said objections, Defendants dispute. Wilson's interrogation was transcribed and does not contain any testimony about going to the FBI or the State's Attorney's Office. (Ex. 6: Wilson Interrogation).**
>
>**Defendants further deny the assertion contained in this paragraph is material to the issues presented in Plaintiff's motion for partial summary judgment.**

### Wilson's Termination

35. The Board of Trustees did not vote to terminate Wilson as the police chief. (Exhibit A, ¶¶ 62-63; Exhibit G. Brooks Dep., p. 81:18-22, 82:3-6; Exhibit H Lewis Dep., p. 49:14-17, 159:17-24).

**RESPONSE**: **Defendants object to the assertions contained in this Paragraph as there are no Exhibits G or H in the record.**

**Subject to and without waiving said objection, Defendants admit only that there was no formal vote in an open meeting to terminate Wilson as the police chief. Defendants deny that the Trustees did not reach a consensus to terminate Wilson. (Dkt. 059 ¶ 44).**

36. Wilson was never given a statement of charges nor a hearing before the Board of Trustees before she was removed as police chief. (Exhibit D. Wilson Dep. p. 357:22-24, 358:1-3).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit D in the record. Subject to and without waiving said objection, Defendants admit.**

37. Beck-Fulgham never referred the charges against Wilson to the Board of Fire and Police Commission. (Exhibit A, ¶71, Exhibit E. Beck-Fulgham Dep. p. 240:7-24, 241:1-13).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit E in the record. Subject to and without waiving said objection, Defendants admit.**

38. Brooks testified that Wilson should have been given written notice of the charges and

12

the meeting before the Board of Trustees but did not receive it. (Exhibit G - Brooks Dep., p. 85:4-24).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit E in the record.**

**Defendants further object to the assertions contained in this Paragraph as the cited material is inadmissible speculation, lacks foundation and an improper legal conclusion from a lay witness. There is no foundation for Brooks' lay opinions as to matters of law that govern this case and his lay opinions of the legal requirements are not admissible, and not relevant or material to the issues presented for summary judgment.**

**Subject to and without waiving said objections, Defendants deny the statements contained in this Paragraph as the cited material does not support these assertions.**

39. Brooks testified that the process of terminating Wilson was handled incorrectly. He testified that he provided each board member with documents from the Police and Fire Commission handbook and the Illinois compiled statute, demonstrating that Chief Wilson had the right to due process. The most that could be done to Chief Wilson was to revert her to a civil service position. Additionally, Brooks pointed out that attorney Steve DiNolfo is not an investigator, and his findings should be presented to the Police and Fire Commission, not the Board of Trustees. He told the trustees they should not discuss this matter; Chief Wilson should present her case with her lawyer. His concerns were dismissed. (Exhibit G - Brooks Dep.., pp. 84:4-24, 85:1-3).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit G in the record.**

**Defendants further object to the assertions contained in this Paragraph as the cited material is inadmissible speculation, lacks foundation and an improper legal conclusion from a lay witness. There is no foundation for Brooks' lay opinions as to matters of law that govern this case and his lay opinions of the legal requirements**

>**are not admissible, and not relevant or material to the issues presented for summary judgment.**
>
>**Subject to and without waiving said objections, Defendants admit Brooks testified as stated. Defendants deny his statements reflect the law governing this case.**

40. Wilson was terminated on April 5, 2023, by operation of Beck-Fulgham's April 1, 2022 letter. (Exhibit D. Wilson Dep. p. 219:17-24, 221:20-24, 222:1-5).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit D in the record. Subject to and without waiving said objection, Defendants admit.**

41. Plaintiff testified that she was entitled to "just-cause protection" in her appointment as police chief. She would revert back to her previous position as sergeant when she was removed as police chief (Exhibit D. Wilson Dep. pp. 308:22-24, 309:1-17).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit D in the record.**

>**Defendants further object to the assertions contained in this Paragraph as the cited material is inadmissible speculation, lacks foundation and an improper legal conclusion from a lay witness. There is no foundation for Plaintiff's lay opinions as to what legal process she is entitled to and her lay opinion as to a question of law is inadmissible, and is not relevant or material to the issues presented for summary judgment.**
>
>**Subject to and without waiving said objections, Defendants admit Plaintiff testified as stated. Defendants deny her statements reflect the law governing this case.**

42. Bolding has been a Village trustee. (Exhibit F. Bolding Dep. pp. 6:9-10, 56-58).

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit F in the record. Subject to and without waiving said objection, Defendants admit.**

43. No one tried to remove Wilson as police chief even though she did not sign the contract to be the police chief. (Exhibit F. Bolding Dep. p. 58:5-8).

14

**RESPONSE:** **Defendants object to the assertions contained in this Paragraph as there is no Exhibit F in the record.**

**Subject to and without waiving said objection, Defendants admit.**

**Defendants deny this assertion is material to the issues presented in Plaintiff's motion for partial summary judgment.**

           Respectfully Submitted,

           **DEFENDANTS**

         By:  */s/ Lauren M. DaValle*
            One of their attorneys

Michael J. McGrath
Robert Wilder
Lauren M. DaValle
Odelson, Murphey, Frazier & McGrath, LTD.
3318 W. 95th St.
Evergreen Park, IL 60805
(708) 424-5678
LDavalle@omfmlaw.com

**EXHIBITS IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS IN SUPPORT OF HER MOTION FOR PARTIAL SUMMARY JUDGMENT**

| Ex. 1 | University Park Code Section 220-05 |
|---|---|
| Ex. 2 | Shirley Bolding Deposition Transcript |
| Ex. 3 | Ernestine Beck-Fulgham Deposition Transcript |
| Ex. 4 | Trustee Theo Brooks Deposition Transcript Day 1 |
| Ex. 5 | Trustee Theo Brooks Deposition Transcript Day 2 |
| Ex. 6 | Wilson Interrogation Transcript |